UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEARNEY CONSTRUCTION
COMPANY LLC,

        Plaintiff,

v.                          CASE NO.:  8:09-CV-1850-T-26-TBM

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

        Defendant.

v.

KEARNEY CONSTRUCTION
COMPANY, LLC, BING CHARLES W.
KEARNEY, BRIAN W. SEEGER,
ALAN PAYNE, FLORIDA
TRUCKING CO., INC., FLORIDA
EQUIPMENT CO., LLC, KEARNEY
CONSTRUCTION COMPANY, INC.,
AVT EQUIPMENT LLC, KEARNEY
DEVELOPMENT COMPANY, INC.,
K & S EQUIPMENT COMPANY, INC.,
FLORIDA SOIL CEMENT, LLC, FLORIDA
FUEL TRANSPORTERS, LLC.

        Third Party Defendants.

_____/

**TRAVELERS CASUALTY AND SURETY COMPANY OF
AMERICA'S MOTION AND MEMORANDUM OF LAW TO REQUIRE
SPECIFIC PERFORMANCE OF THE COLLATERAL SECURITY
DEPOSIT PROVISIONS AND BOOKS AND RECORDS PROVISION
OF THE GENERAL AGREEMENT OF INDEMNITY**

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), by and

through its undersigned counsel, files this Motion to Require Specific Performance of the

Collateral Security Deposit Provisions and Books and Records Provision of the General

Agreement of Indemnity and incorporated Memorandum of Law.  As set forth below, Third Party Defendants, Kearney Construction Company, LLC ("Kearney LLC"), Bing Charles W. Kearney ("Bing Kearney"), Brian W. Seeger, Jr. ("Seeger"), Alan Payne ("Payne"), Florida Trucking Co., Inc. ("Florida Trucking"), Florida Equipment Co., LLC ("Florida Equipment"), Kearney Construction Company, Inc. ("Kearney Construction"), AVT Equipment, LLC ("AVT"), Kearney Development Company, Inc. ("Kearney Development"), K&S Equipment  Company, Inc. ("K&S"), Florida Soil Cement, LLC ("Florida Soil"), Florida Fuel Transporters, LLC ("Florida Fuel") (sometimes collectively referred to as "Indemnitors"), in order to induce Travelers to issue bonds on behalf of Kearney Construction, Kearney Development, and Kearney LLC, agreed to "deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss."

In reliance on the Indemnitors' agreement, Travelers provided bonds on behalf of Kearney Construction, Kearney Development, and Kearney LLC.   Performance and payment claims have been made against Travelers under various bonds issued on behalf of Kearney LLC, yet the Indemnitors now refuse to honor their indemnity obligations. Further, Kearney LLC, Florida Trucking, Florida Equipment, Kearney Construction, and AVT (sometimes referred to as the "Bankrupt Indemnitors") have filed separate Chapter 11 proceedings in the U.S. Bankruptcy Court in the Middle District of Florida (collectively, the

2

"Bankruptcy Proceedings").[1]   As a result of the filing of bankruptcy by the Bankrupt Indemnitors, Travelers further faces irreparable damage in the event the Indemnitors fail to satisfy their indemnity obligations.   Thus, if the relief requested by Travelers herein is not granted, Travelers may forever lose the benefits of its promised collateral security.

Accordingly, for the reasons set forth below, Travelers respectfully requests that this Court specifically enforce the collateral security provisions of the General Agreement of Indemnity by entering an Order:

a. compelling Indemnitors Bing Kearney, Seeger, Payne, K&S, Florida Soil, Kearney Development, Florida Fuel, to post $3.5 million in collateral with Travelers, and otherwise prohibit all transfers and encumbrances of these Indemnitors' assets until they have done so;

b. requiring the Indemnitors to provide Travelers, within ten days of the Order, with a full accounting of all assets that the Indemnitors currently own and which they owned as of March 6, 2009, including a full disclosure of the disposition of any assets since March 6, 2009 (ninety days prior to the first bankruptcy filing by a Bankrupt Indemnitor);[2]

c. requiring the Indemnitors to permit Travelers to have full access to the Indemnitors' books and records, including financial information such as bank and investment account statements and tax returns; and

d. granting Travelers such further relief as this Court deems just and proper.

The relief that Travelers requests from the Indemnitors, the posting of collateral, furnishing of a full accounting of all assets, and giving Travelers access to the Indemnitors' books and records, is substantially the same relief that the Middle District of Florida

---

[1] The automatic stay has been lifted to permit Travelers to proceed with its claims in the captioned litigation. Doc. 385 in Case number 09-11791 on the docket of the United States Bankruptcy Court for the Middle District of Florida.

[2] FTC filed for bankruptcy protection on June 4, 2009, in case number 09-11791 on the docket of the United States Bankruptcy Court for the Middle District of Florida.

awarded to a surety in a similar matter, and is consistent with other rulings from the Southern District of Florida and Northern District of Florida.

## BACKGROUND

**The Indemnity Agreement.** Travelers is a surety company that issues payment and performance bonds and stands as surety for selected contractors. Kearney LLC is a contractor who was required to provide payment and performance bonds on certain projects. Because a surety is, in effect, a guarantor, sureties typically require that the construction company, and often its principals and related companies, agree to exonerate, indemnify and collateralize the surety against loss.

In order to induce Travelers to issue bonds, on various dates, the Indemnitors (Kearney LCC and owners and related entities of Kearney LLC) executed a General Agreement of Indemnity ("GAI") and/or Additional Indemnitor and Limited Liability Riders to the GAI in favor of Travelers.[3]  Specifically, on or about December 7, 2004, Florida Trucking, Kearney Construction, Kearney Development and K&S executed the GAI.[4]  Additional Indemnitor Riders to the GAI were later executed Florida Soil, Kearney LLC, AVT, Florida Fuel, Florida Equipment, and by Bing Kearney, Seeger, and Payne, individually (the "Riders").  The Riders provide that parties signing the Riders "shall become an additional Indemnitor to the Agreement [the GAI] bound by all of the terms and conditions of the Agreement."

---

[3] Affidavit of Dennis McDonnell ("McDonnell Affidavit"), attached hereto as Exhibit "A."  A copy of the GAI with the Riders is attached at Exhibit "1" to the Affidavit.
[4] ¶5, GAI, attached as Exhibit "1" to the Affidavit.

In the GAI, the Indemnitors expressly agreed that they "shall exonerate, indemnify and save [Travelers] harmless from and against any and all Loss" and that "[a]mounts due to [Travelers] shall be payable upon demand."[5] "Loss" is defined in the GAI as:

> All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers']: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.[6]

The Indemnitors further agreed to:

> deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with [Travelers], upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond. [Travelers] shall have no duty to invest, or provide interest on, the deposit. Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.[7]

> ...

> The obligations of Indemnitors hereunder are joint and several.[8]

---

[5] ¶3 GAI, attached as Exhibit "1" to the Affidavit.
[6] ¶1, GAI, attached as Exhibit "1" to the Affidavit.
[7] ¶5, GAI, attached as Exhibit "1" to the Affidavit.
[8] ¶7, GAI, attached as Exhibit "1" to the Affidavit.

The Indemnitors also agreed that any of the following "shall constitute a Default" of the GAI:

> (a)a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to [Travelers] by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change of control means the addition or departure of any person or entity having a 10% or greater ownership interest in any Indemnitor.[9]

In the event of a "Default," the Indemnitors are required to assign, convey, and transfer to Travelers all of the Indemnitors' rights, title, and interest in Property, and Travelers has the right to, among other things, take possession of Indemnitors' Property, including Contract funds.[10]

The Indemnitors further agreed to provide Travelers free access, at reasonable times to books, records and financial information of the Indemnitors:

> Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them.  Indemnitors expressly authorize [Travelers] to access their credit records, including, but not

---

[9] ¶1, GAI, attached as Exhibit "1" to the Affidavit.
[10] ¶6, GAI, attached as Exhibit "1" to the Affidavit.

limited to, account numbers and/or account balances from financial institutions …[11]

**The Bonds and the Claims.** In reliance on the GAI and at the request of the Indemnitors, Travelers issued various performance and payment bonds, at various times, naming Kearney LLC as principal (the "Bonds"). Claims have now been made on several of the Bonds by obligees and/or payment bond claimants.

For instance, on or about August 11, 2009, the Pasco County Board of Commissioners ("Pasco County") defaulted Kearney LLC on the US 41 Tower Road project ("Tower Road Project") and made demand upon Travelers to complete the work.[12] Similarly, Pasco County obtained an Order lifting the stay on the Decubellis Project, terminated Kearney LLC from that project, and made demand upon Travelers to complete the work.[13] Travelers has entered into takeover agreement with Pasco County on both projects.[14] Further, by letter dated April 6, 2010, Polk County advised that Kearney LLC was in default on the bonded Overlook Project, and made demand on Travelers under the bond it issued on behalf of Kearney LLC.[15]

In addition, certain subcontractors, material suppliers, and others that furnished services, materials, labor, and/or equipment (hereinafter the "Claimants") on bonded projects asserted that Kearney LLC failed to pay them for the services, materials, labor,

---

[11] ¶10, GAI, attached as Exhibit "1" to the Affidavit.
[12] ¶7, Affidavit.
[13] *Id.*
[14] *Id.*
[15] ¶8, Affidavit.

and/or equipment they furnished on projects for which Travelers issued payment and performance bonds on behalf of Kearney LLC.[16]

By reason of having executed the Bonds, Travelers has received notice of payment and performance bond claims exceeding $7.5 million.   Travelers has paid numerous claims, for which it is seeking indemnity from the Indemnitors.  As of the filing of this

---

[16] ¶9, Affidavit.  Some claimants have filed lawsuits against Travelers alleging that Kearney LLC failed or refused to pay them for the services, materials, labor and/or equipment that they furnished on Projects that Travelers bonded, including the following:    (1) *The Middlesex Corporation v. Kearney Construction Co., LLC and Travelers Casualty and Surety Company of America*, Case No. 09-19590, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (2) *The Middlesex Corporation v. Kearney Construction Co., LLC and Travelers Casualty and Surety Company of America*, Case No. 09-19592, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (3) *Mainline Supply of Florida, LLC v. Kearney Construction Co., LLC and Travelers Casualty and Surety Company of America*, Case No. 09-CA-8910WS, in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida; (4) *Ferguson Enterprises, Inc. v. Travelers Casualty and Surety Company of America*, Case No. 09-CA-25132, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (5) *B&B Horizontal of Manatee, Inc. v. Travelers Casualty and Surety Company of America*, Case No. 09-CA-10105, in the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida; (6) *Cemex Construction Materials Florida, LLC v. Travelers Casualty and Surety Company of America*, Case No. 09026323, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (7) *Tampa Pavement Constructors, Inc. v. Travelers Casualty and Surety Company of America*, Case No. 09015535-CI-21, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida; (8) *Tarmac America LLC v. Travelers Casualty and Surety Company of America*, Case No. 09-CC-32134, Division M, in the County Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (9) *Hydro Conduit Corporation d/b/a Rinker Materials Concrete Pipe Division v. Travelers Casualty and Surety Company of America*, Case No. 09-CA-026321, Division G, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida; (10) *Florida Rock Industries, Inc. v. Travelers Casualty & Surety Co. of America, ALV Apartments Limited Partnership, and Kearney Development Co., Inc.*, Case No. 53-2009-CA-0011191, in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida; (11) *Ajax Paving Industries of Florida, LLC ("Ajax") v. Travelers Casualty & Surety Company of America*, Case No. 51-2009-CA-10083-WS, Section G, in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida; and (12) *Southwest Signal, Inc. v. Travelers Casualty and Surety Company of America*, Case No. 09-CA-031005, Division C, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

motion, Travelers anticipates that it faces $3.5 million in exposure beyond the amounts already paid.   This amount is comprised of $1.7 million in performance bond losses related to the US 41 Project, and pending payment bond claims of $1.2 million, and expenses of $600,000.00.[17]

**The Collateral Demand.**   On August 28, 2009, in accordance with the GAI, Travelers demanded that indemnitors K&S Equipment, Florida Soil, Kearney Development and Florida Fuel deposit collateral security with Travelers in the amount of $8,750,000.00, to secure Travelers against loss and expense in connection with the claims against the Bonds that Travelers executed on some of the Projects.[18]   On August 28 and 31, 2009, in accordance with the GAI, Travelers demanded that Bing Kearney deposit collateral security with Travelers in the amount of $6,550,000.00, to secure Travelers against loss and expense in connection with the claims against the Bonds that Travelers executed on some of the Projects, where Bing Kearney was Indemnitor.[19]   Similarly, on August 31, 2009, Travelers demanded that Seeger and Payne deposit collateral security with Travelers in the amount of $6,550,000.00, to secure Travelers against loss and expense in connection with the claims against the Bonds that Travelers executed on some of the Projects, where Seeger and Payne were Indemnitor.[20]   As of the filing of this

---

[17] ¶10, Affidavit.
[18] *See* Letter dated August 28, 2009 from Travelers' counsel, attached at Exhibit "2" to the Affidavit.
[19] *See* Letters dated August 28 and 31, 2009 from Travelers' counsel, attached at Exhibits "3" and "4" to the Affidavit.
[20] *Id.* at Exhibit "4."

Motion, Travelers has not received collateral from the Indemnitors.[21]

Travelers fears that the Indemnitors will not be able to satisfy judgments potentially entered against Travelers in relation to the Bonds on the Projects, as required under the GAI, and Travelers' ongoing expenses.  Further, among other suits, the Florida Rock Litigation, Ajax Litigation, and Hydro Conduit Litigation remain pending and Kearney LLC and the Indemnitors have not satisfied or resolved the respective claims brought in such suits.  Also, as discussed above, Kearney LLC has been defaulted on three bonded Projects, and Travelers has been called upon to remedy those defaults.  Thus, Travelers has reasonable cause to fear that it will suffer further losses under the Bonds.[22]

## MEMORANDUM OF LAW

The equitable remedy for breach of an agreement "where one agrees that something has been or will be done" is a decree for specific performance.  *Seaboard Oil Co. v. Donovan*, 128 So. 821, 824 (Fla. 1930).  The Indemnitors cannot dispute that they executed a GAI and/or Riders obligating them to post collateral security with Travelers upon demand.  Under Florida law, a court has the discretion to grant specific performance if: (1) the obligations of the parties with respect to the conditions of the contract and actions to be taken by the parties are clear, definite, and certain; and (2) the party seeking specific performance satisfies the Court that there is no adequate remedy at law.  *Barnes*

---

[21] ¶14, Affidavit.
[22] ¶15, Affidavit.

10

*v. Diamond Aircraft Industries, Inc.*, 499 F. Supp. 2d 1311, 1319 (S.D. Fla. 2007) (citations omitted). In fact, the Middle District of Florida, Southern District of Florida, and Northern District of Florida have already granted specific performance to sureties in such similar circumstances.

### I. Travelers is Entitled to Specific Performance because the GAI is Clear, Definite, and Certain.

The Indemnity Agreement executed by the Indemnitors is clear, definite, and certain. As a result, Travelers is entitled to specific performance of its unambiguous terms. *See Barnes*, 499 F. Supp. 2d at 1319. "Under Florida contract law, where the contract terms are clear and unambiguous, a court must give effect to the plain meaning of the terms." *National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc.*, 422 F.3d 1275, 1284 (11th Cir. 2005). Amongst other things, the Indemnitors agreed:

(1)    that they shall exonerate, indemnify and save [Travelers] harmless from and against any and all Loss; "[a]mounts due to [Travelers] shall be payable upon demand;[23]

(2)    that all [a]mounts due to [Travelers] shall be payable upon demand;[24] and

(3)    to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with [Travelers], upon demand.[25]

---

[23] ¶3, GAI, attached as Exhibit "1" to the Affidavit.
[24] ¶3, GAI, attached as Exhibit "1" to the Affidavit.
[25] ¶5, GAI, attached as Exhibit "1" to the Affidavit.

The Indemnitors cannot dispute that the clear, definite, and certain language of the GAI requires the Indemnitors to post collateral security. Numerous payment and performance claims have been made against Travelers under the Bonds. Travelers demanded, pursuant to the GAI, that certain Indemnitors post collateral security in the amount of $8,750,000.00 and that other Indemnitors post collateral security in the amount of $6,550,000.00, based on the Bonds indemnified by each Indemnitor. Nevertheless, the Indemnitors failed to post collateral security and abide by the clear terms of the GAI.

A.  **Courts in the Florida District Courts and Across the Country are in Accord that Sureties, Such as Travelers are Entitled to Specific Performance of Collateral Security Provisions.**

The Middle District of Florida, Southern District of Florida, and Northern District of Florida have all entered orders similar to that requested by Travelers requiring indemnitors to post collateral with a surety upon demand in accordance with an indemnity agreement, discussed below. *See Cincinnati Ins. Co. v. Water Equipment Services, Inc., et al.*, Case No. 07cv1641, in the United States District Court for the Middle District of Florida (Kovachevich, J.), attached hereto as Exhibit "B;" *Lincoln General Ins. Co. v. Development and Communications Group of Florida, Inc., et al.*, Case No. 09cv20173 in the United States District Court for the Southern District of Florida, attached as Exhibit "C;" *Fidelity & Deposit Co. of Maryland v. Emerald Coast Specialties, Inc., et al.*, Case No. 07cv123, in the United States District Court for the Northern District of Florida, is attached hereto as Exhibit "D."

12

Furthermore, courts are in accord that sureties, such as Travelers, are entitled to specific performance of collateral security provisions. *See Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (reversing district court's dismissal of claim because it failed to authorize prejudgment attachment in suit for specific performance of collateral security provision); *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F.Supp. 680, 683-684 (S.D.N.Y. 1939) (holding that "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Milwaukie Constr. Co. v. Glen's Fall Ins. Co.*, 367 F.2d 964, 966 (9th Cir. 1966) (affirming entry of judgment for specific performance in favor of the surety when it knew that liability claims would be filed against it).

A court in this District recently determined a case involving specific performance of a collateral security clause. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 2006 WL 196940 (M.D. Fla. 2006). The court determined that the purpose of such a clause is to "collateralize the surety's risk *before* its payment of a claim or judgment on behalf of the principal." *Id.* at *1 (emphasis added). However, the surety in *Auto-Owners* asked the court to force the Principal to post collateral security for claims the Surety already paid and settled. *Id.* As a result, the court denied the surety's request for the principal to post the collateral. *Id.* at *2. In so holding, the court noted that the surety did not even argue that the collateral would be used "as a reserve to cover future claims or losses." *Id.*

The court's holding in *Auto-Owners* illustrates the reason why the Indemnitors must immediately provide Travelers with the collateral security the Indemnitors agreed to provide. Clearly, based on the holding in *Auto-Owners*, once a judgment or a settlement is paid, a surety is no longer entitled to specific performance of the collateral security provision. *Id.* Travelers is currently involved in litigation and facing potential liability under performance and payment bonds from various Claimants on the Projects. Unlike in *Auto-Owners*, where the surety did not satisfy this Court that the collateral security would be used to protect against future claims and losses, Travelers requests specific performance for the express purpose of protecting itself against future loss. As the court in *Marine Midland*, supra, clearly stated – "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." 28 F. Supp. at 683-684.

In a similar case, the Middle District of Florida entered an order in July 2008 granting a motion to compel specific performance of the collateral security provision of an indemnity agreement, ordering that the defendants place collateral security with the surety in the amount of $2 million, and ordering that the defendants "shall not sell, transfer, alienate or encumber any property" [with certain exceptions] until the collateral is posted. A copy of the order in *Cincinnati Ins. Co. v. Water Equipment Services, Inc., et al.*, Case No. 07cv1641, in the United States District Court for the Middle District of

14

Florida (Kovachevich, J.), attached hereto as Exhibit "B."[26]  In the Order, the Middle District of Florida further held that the indemnitors were required to furnish a full accounting of all of their assets to the surety and to give the surety full access to the indemnitors' books and records.

In a similar case, another Florida federal court entered an order granting a motion to require collateral security, ordering that the defendants place collateral security with the surety of over $200,000.00, and prohibiting the indemnitors from transferring or encumbering their assets until the collateral is posted.  A copy of the order in *Lincoln General Ins. Co. v. Development and Communications Group of Florida, Inc., et al.*, Case No. 09cv20173 in the United States District Court for the Southern District of Florida, attached as Exhibit "C."  In the Order, the Southern District of Florida further held that the indemnitors were required to furnish a full accounting of all of their assets to the surety for the seven months prior to entry of the Order.

In yet another similar case, a Florida federal court entered an order granting a motion to require collateral security, ordering that the defendants place collateral security with the surety of over $1.9 million, and ordering that the defendants "shall not sell, transfer, alienate or encumber any property" [with certain exceptions] until the collateral

---

[26] In the *Cincinnati* matter, the indemnitors argued that the surety was not substantially likely to succeed on the merits, that the case was not appropriate for specific performance, and that the surety would not suffer irreparable injury.  In rejecting the indemnitors' arguments, the Middle District ordered that the indemnity agreement provides the surety with the right to be collateralized when it determines in its sole judgment that potential liability exists, and that the surety demonstrated the likelihood of success as to its right to compel the deposit of the collateral from the indemnitors.  *See* Ex. B.

is posted.  A copy of the order in *Fidelity & Deposit Co. of Maryland v. Emerald Coast Specialties, Inc., et al.*, Case No. 07cv123, in the United States District Court for the Northern District of Florida, is attached hereto as Exhibit "D."

By executing the GAI, the Indemnitors willingly agreed to deposit with Travelers collateral security to cover any potential claims or losses.  Here, specific performance is the appropriate remedy since, unlike *Auto-Owners*, the surety has not yet paid the claims of multiple claimants, but faces real exposure to those claims.  For example, Hydro Conduit alleges damages in the amount of over $200,000.00 on the Gandy project, Florida Rock alleges damages in the principal amount of over $34,000.00 on the Gandy project, and Ajax alleges damages in the principal amount of over $123,000.00 on the Decubellis project.  Travelers is further still incurring losses and expenses in completing the Pasco County Projects, and in addressing Kearney LLC's default on the Overlook Project.

As each day passes, Travelers is incurring costs, expenses, and losses for which the Indemnitors promised to hold Travelers harmless.  As a result, specific performance is not only proper, but it is essential or else Travelers will lose, forever, the rights and remedies promised by the Indemnitors.

Travelers fears not only potential liability under the Bonds, but also fears that the Indemnitors will not be able to indemnify Travelers in the future should Travelers be found liable to the Claimants for the claims against the Bonds.  As stated above, five of the Indemnitors already filed for bankruptcy in the Bankruptcy Proceedings.  Travelers

has used a substantial sum of its own funds, and continues to incur losses, in an attempt to satisfy claims because of the Indemnitors' defaults.   Travelers requests specific performance for the express purpose of protecting itself only against future loss or expense related to the Bonds at issue. The Indemnitors willingly bargained for the GAI and this Court should not allow the Indemnitors to avoid its clear terms. Unless the Court acts immediately, Travelers will find itself in exactly the same position as the surety in *Auto-Owners* found themselves, forced to incur fees, incur expenses, and pay a judgment/settlement without the bargained for collateral from the Indemnitors.

    **B.**    **Travelers is Entitled to Specific Performance because the Indemnitors' Failure to Post Collateral Security Leaves Travelers Without an Adequate Remedy at Law.**

Courts across the country agree that a principal's failure to post collateral security, when an indemnity agreement requires it do so, leaves the surety without an adequate remedy at law. *Great American Ins. Co. Conart, Inc.*, 2006 WL 839197 at *6 (M.D. Ga. 2006); *see also Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (finding that "[s]ureties are ordinarily entitled to specific performance of collateral security clauses"); *U.S. Fidelity & Guaranty Co. v. J. United Electric*, 62 F. Supp. 2d 915, 923 (E.D. N.Y. 1999) (holding that where losses under the bond are continuing and total loss is unascertainable, the surety does not have an adequate remedy at law – only an equitable remedy for specific performance of the collateral security provision); *Travelers Casualty and Surety Co. v. Ockerlund*, 2004 WL 1794915, *5 (N.D. Ill. 2004) (citing numerous cases for the premise that any judgment for money damages without

"according [the surety] relief of specific performance pursuant to the ... indemnity agreement is not an adequate remedy and would irreparably harm [the surety] by depriving it of prejudgment relief to which it is contractually entitled."); *Milwaukie Construction Co.*, 367 F. 2d at 966 (reasoning that "it is clear that where [the surety] knew it was going to have liability claims filed against it but did not know the amount of those claims, the legal remedy of money damages would not be adequate).

Additionally, it has been held that "[w]here liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision." *American Motorists Ins. Co. v. United Furnace Co.*, 876 F. 2d 293, 300 (2d Cir. 1989).

Travelers made demand on certain of the Indemnitors by letter dated August 28 and 31, 2009, requesting that they satisfy their obligations under the GAI and post collateral security in the amount of $8,750,000.00 and $6,550,000.00, respectively. Travelers has already incurred losses associated with Kearney LLC's defaults under the bonds, and continues to incur losses. The harm to Travelers is an immediate harm because the Indemnitors are not currently doing that which they bargained to do.

The court in *Great American* recognized that if equitable relief was not granted, "[the surety] will be forced to continue to use its own funds in defense of the claims against the [Indemnitors]." 2006 WL 839197 at *6. Similarly here, not only has Travelers already expended a significant sum of its <u>own</u> funds to satisfy the claims

18

against KCC, but Travelers may potentially incur millions of dollars more in the near future. Travelers seeks to be collateralized for <u>future</u> liability and loss by way of this Motion. Based on the well settled case law, the Indemnitors' failure to post collateral security leaves Travelers without an adequate remedy at law. Because the exact amount of liability is uncertain at this point, only specific performance can force the Indemnitors to do exactly that which they bargained to do – post funds in the form of collateral security.

## II.   TRAVELERS IS ENTITLED TO SPEFICIC PERFORMANCE OF THE BOOKS AND RECORDS PROVISIONS OF THE GAI.

The Indemnitors (including Messrs. Kearney, Seagers and Payne) further agreed to provide Travelers with free access, at reasonable times, to their records, including financial information. The GAI provides, in pertinent part:

> Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize [Travelers] to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions ...[27]

Without access to the Indemnitors' records and financial information, Travelers cannot adequately protect its indemnity rights, and enforce the collateral obligation of the Indemnitors. In a similar case, another federal court held that Travelers was entitled to collateral security of over $2.3 million and access to the indemnitors' books and records

---

[27] ¶10, GAI, attached as Exhibit "1" to the Affidavit.

pursuant to the terms of an indemnity agreement. *See Travelers Cas. & Sur. Co. of Am. v. J.O.A. Constr. Co.*, 2009 WL 928848 (E.D. Mich. 2009). In *J.O.A.*, Travelers moved for specific performance of the collateral security provision of the indemnity agreement to protect itself against future losses and requested access to the indemnitors' books and records pursuant to paragraph 10 of an indemnity agreement, which contains identical language to the first sentence of the books and records provision of the GAI in this matter. *J.O.A.*, 2009 WL 928848 at *1. The court granted the surety's motion for specific performance of the collateral security provision and the books and records provision of the indemnity agreement because the agreement was clear and unambiguous and there were no issues of fact regarding the surety's entitlement to collateral security and to "immediate access" to the indemnitors' books, records, and accounts within ten days of entry of the court's order. *Id.* at *3-4. Here, this Court should grant specific performance of the books and records provision in paragraph 10 of the GAI for the same reasoning expressed in *J.O.A.* because the provision is clear and unambiguous. *See id.*

## CONCLUSION

The GAI is clear, definite, and certain. The Indemnitors are required to post collateral security to prevent Travelers from incurring any liability or loss. In breach of the GAI, the Indemnitors have failed to post any collateral security. Additionally, Courts across the country, including the Middle District of Florida, Southern District of Florida, and Northern District of Florida agree that specific performance of the collateral security provisions is appropriate and proper.

Finally, case law firmly establishes that the Indemnitors failure to post collateral security leaves the surety without an adequate remedy at law. Based on the well-settled case law, and the specific facts of this matter, this Court should grant Travelers the relief requested in its Motion to Require Specific Performance of the Collateral Security Deposit Provisions of the General Agreement of Indemnity.

**WHEREFORE**, Travelers respectfully requests that this Court enter an Order in favor of Travelers and against the Indemnitors:

a. Compelling Indemnitors Bing Kearney, Seeger, Payne, K&S, Florida Soil, Kearney Development, Florida Fuel, to post $3.5 million in collateral with Travelers, and otherwise prohibit all transfers and encumbrances of these Indemnitors;

b. requiring the Indemnitors to provide Travelers, within ten days of the Order, with a full accounting of all assets that the Indemnitors currently own and which they owned as of March 6, 2009, including a full disclosure of the disposition of any assets since March 6, 2009 (ninety days prior to the first bankruptcy filing by a Bankrupt Indemnitor);[28]

c. requiring the Indemnitors to permit Travelers to have full access to the Indemnitors' books and records, including financial information such as bank and investment account statements and tax returns; and

d. granting Travelers such further relief as this Court deems just and proper.

MILLS PASKERT DIVERS


Alberta L. Adams
E.A. "Seth" Mills, Jr., Esq.
Florida Bar No. 339652
Email: smills@mpdlegal.com

---

[28] FTC filed for bankruptcy protection on June 4, 2009, in case number 09-11791 on the docket of the United States Bankruptcy Court for the Middle District of Florida.

Alberta L. Adams, Esq.
Florida Bar No. 80063
Email: aadams@mpdlegal.com
Ryan M. Scully, Esq.
Florida Bar No. 0030944
Email: rscully@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa Street, Ste. 2010
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for Travelers*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically using the CM/ECF system or by U.S. Mail on April 21, 2010, to Jesse L. Ray, Esq., Jesse Lee Ray Attorney At Law, P.A., 13014 N. Dale Mabry Hwy #315, Tampa, Florida 33618.

/s/ Alberta L. Adams
Attorney