# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KEARNEY CONSTRUCTION COMPANY
LLC,

**Plaintiff,**

v.                                                    **Case No. 8:09-cv-1850-T-30TBM**

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

**Defendant,**

v.

KEARNEY CONSTRUCTION COMPANY,
LLC, et. al,

      **Third Party Defendants.**
_____/

USAMERIBANK,

      **Garnishee.**
_____/


## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on referral for a Report and Recommendation on several summary judgment motions relating to a writ of garnishment directed to USAmeriBank:

> (1) Travelers' Motion for Summary Judgment in Garnishment Overruling Exemption and Joint Account (Doc. 628) and Kearney's response in opposition (Doc 664);

(2) Travelers' Motion for Summary Judgment in Garnishment as to Claims of FTBB, LLC, and Moose Investments of Tampa, LLC (Doc. 643) and FTBB, LLC's response in opposition (Doc. 663);

(3) Interested Parties' Tonya Kearney, Charles Wesley Kearney, III, Clayton Whitman Kearney, and Bryan G. Kearney Motion for Summary Judgment (Doc. 634) and Travelers' response in opposition (Doc. 656);

(4) FTBB, LLC's Motion for Summary Judgment (Doc. 644) and Travelers' response in opposition (Doc. 665);

(5) Bing Charles W. Kearney's Motion for Summary Judgment (Doc. 645) and Travelers' response in opposition (Doc. 662).

A hearing was conducted on February 17, 2016.

## I. Procedural History

### A. The Instant Case

A brief review of the pertinent procedural history in this action is useful.  On October 27, 2011, the district court granted an agreed motion for entry of final judgment in favor of Travelers and against Bing Charles W. Kearney ("Kearney" or "Bing Kearney") and others in the amount of $3,750,000.00.  (Doc. 243).  The Clerk entered Judgment the following day. (Doc. 244).

On July 23, 2015, this Court granted Travelers' ex-parte motion for a writ of garnishment directed to USAmeriBank, and the Clerk issued the Writ of Garnishment (hereinafter, "the Writ") the next day.[1]  (Docs. 554, 556).  On August 12, 2015,

---

[1]The pleadings and motions sometimes refer to this as the "Second Writ of Garnishment."  Travelers' first writ of garnishment directed to USAmeriBank was issued on September 26, 2014.  (Doc. 279).  For a variety of reasons, no judicial resolution or final judgment in garnishment was reached on this first writ and it dissolved by operation of law.

USAmeriBank answered the Writ, declaring that it was indebted to Kearney in the total amount of $1,158,037.38, such amount comprised of several accounts. (Doc. 577).

USAmeriBank identified the following accounts:

| Account No. | Account Holders | Amount Held |
|---|---|---|
| -0056 | Bing Kearney, Jr.<br>Tonya Nuhfer-Kearney | $625,305.39 |
| -3695 | Bing Kearney, Jr.<br>Tonya Nuhfer-Kearney<br>Charles Wesley Kearney III<br>Clayton Whitman Kearney | $28,345.60 (plus an additional $111.67 held pursuant to a state court writ of garnishment) |
| -0129 | Bing Kearney, Jr.<br>Tonya Nuhfer-Kearney<br>Charles Wesley Kearney III<br>Clayton Whitman Kearney | $4,426.41 |
| -0302 | Bing Kearney, Jr.<br>Charles Wesley Kearney III<br>Clayton Whitman Kearney | $1,185.17 (plus an additional $59.61 held pursuant to a state court writ of garnishment) |
| -0020 | Bing Kearney, Jr.<br>Charles Wesley Kearney III<br>Clayton Whitman Kearney | $39,722.31 |
| -7939 | Bing Kearney, Jr.<br>Bryan G. Kearney | $1,037.41 |
| -1122 | Bing Kearney, Jr. | $457,493.81 |

*Id.*

Pertinent to this case, USAmeriBank advised that each of these accounts, with the exception of the -1122 account, was held on its general ledger account pursuant to the writ of

3

garnishment previously served by Regions Bank on May 17, 2013.[2]  According to

USAmeriBank, the -1122 account was a traditional Individual Retirement Account ("IRA")

not subject to any prior writ of garnishment.  *Id.* at ¶ 7.  The six accounts subject to prior writs

– to wit:   -0056, -3695, -0129, -0302, -0020, and -7939 – with total value of $700,193.57,

are referred to herein as the "subject accounts."[3]

     USAmeriBank identified those "who may have an interest in the accounts" as Bing

Charles W. Kearney, Jr.; Tonya Nuhfer-Kearney; Charles Wesley Kearney III; Clayton

Whitman Kearney; and Bryan G. Kearney.  *Id.* at ¶ 8.

     On August 17, 2015, Kearney timely filed a Claim of Exemption and Request for

Hearing, asserting exemption from garnishment under the "head of family wages" exemption

and "other exemptions as provided by law."  (Doc. 583).[4]  Travelers objected to Kearney's

claim of exemption on August 31, 2015, arguing that his stated exemptions should be denied.

(Doc. 594).

---

    [2]USAmeriBank's Answer also indicated that a small amount of monies from accounts
-3695 and -0302 were separately held on the basis of writs issued in an unrelated state court
case.  *Id.*

    [3]As explained below, the -1122 account is not addressed in the Report and
Recommendation.

    [4]In the explanation section, Kearney states:
> The funds are tenants-by-the-entireties funds with my wife. Plaintiff does
> not have a judgment against my wife and, as a result, the funds are not
> susceptible to garnishment, as a matter of law.
> Also, there are numerous issues involved with such funds as a result of my
> (and my wife's) recent settlement with Regions Bank, which can be
> explained in more detail upon a hearing of my claim of exemption.

*Id.* at 2.

Three motions to dissolve the Writ were filed – one by FTBB, LLC ("FTBB") and Moose Investments of Tampa, LLC ("Moose")[5] (Doc. 595); the second by Kearney (Doc. 596); and the third by Interested Parties, namely, Tonya Kearney, Charles Wesley Kearney, III, Clayton Whitman Kearney, and Bryan G. Kearney (Doc. 597).  Travelers responded and opposed each of the motions to dissolve.  (Docs. 603, 604, 605).

This Court scheduled an evidentiary hearing for October 14, 2015, on Kearney's Claim of Exemption, as well as the three motions to dissolve the Writ.  (*See* Docs. 590, 612).  Upon request of the parties, the October 14, 2015, evidentiary hearing was continued in lieu of the filing of motions for summary judgment relating to the Writ.  (Doc. 621).  And, on October 21, 2015, Kearney filed an Amended Claim of Exemption and Request for Hearing.  (Doc. 623).  The Amended Claim of Exemption was identical to the original claim, except that it included a claim for "retirement or profit-sharing benefits or pension money."  Thereafter, Travelers filed a motion to strike the Amended Claim of Exemption (Doc. 626), which this Court denied (Doc. 680).

## B. "The Regions Case"

The procedural history of *Regions Bank v. G3 Tampa, LLC, et al.*, Case No. 8:09-cv-1841-T-17MAP (herein, "the Regions case") also provides necessary context to this dispute.

---

[5]Bing Kearney's son, Clayton Kearney, owns Moose, which in turn manages FTBB.

5

In September 2009, Regions Bank ("Regions") initiated suit against G3 Tampa, LLC, Kearney, and others. In September 2012, after non-jury trial, judgment was entered in favor of Regions and against Kearney in the amount $3,407,620.35. (Regions case, Doc. 177).

Regions thereafter pursued collection on the judgment. On May 17, 2013, the Clerk issued a writ of garnishment directed to USAmeriBank. (*Id.*, Doc. 202, "the Regions writ"). USAmeriBank answered the Regions writ stating that it was indebted to Kearney in the amount of $700,022.29.[6] (*Id.*, Doc. 212). Kearney claimed a tenancy by the entireties ("TBE") exemption (*id.*, Doc. 218) and sought to dissolve that writ citing improper notice (*id.*, Doc. 255).

In short, on March 7, 2015, district judge Elizabeth A. Kovachevich entered an Order rejecting the magistrate judge's Report and Recommendation that Kearney's motion to dissolve be granted. By Judge Kovachevich's analysis, Kearney and his wife did not hold the -0056 account as TBE but rather as a joint tenancy with right of survivorship and thus the account was not exempt from garnishment on that basis. (*Id.*, Doc. 464). The court did not reach the disputed issues on the remaining five accounts, which records showed were held as joint tenancies with rights of survivorship. *Id.*

On May 1, 2015, Regions, Kearney, Tonya Kearney (his wife), and Charles Wesley Kearney, III (his son), Clayton Whitman Kearney (his son), and Bryan G. Kearney (his brother) filed a Stipulation to Grant Regions Bank's Motion for Final Summary Judgment in Garnishment agreeing to all relief requested and to entry of a final judgment in garnishment.

---

[6]The accounts identified are the same as the subject accounts in this dispute.

6

(*Id.*, Doc. 538).  On May 4, 2015, Regions and FTBB filed a joint motion to substitute FTBB as party-plaintiff and to amend case caption based on Regions' sale and assignment of the Regions judgment to FTBB.  (*Id.*, Doc. 545).  The motion to substitute FTBB as plaintiff was granted the following day.  (*Id.*, Doc. 549).  On May 25, 2015, FTBB filed its motion for final summary judgment in garnishment relying on the prior Stipulation to Regions' motion for summary judgment in garnishment.

In light of Travelers' litigation herein, further ruling on the USAmeriBank garnishment in the Regions case has been stayed.

## II. Standard of Review

In accordance with Federal Rule of Civil Procedure 56, summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party.  *Fennell* at 1216 (citing *Welding Servs., Inc.* at 1356).  A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

7

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.  *Porter v. Ray*, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

### III. Summary of Arguments

Travelers has filed two motions for summary judgment in relation to the Writ, along with numerous submissions in support thereof.  (Docs. 628 and 643).

By its first motion (Doc. 628), Travelers "seeks final summary judgment overruling the exemptions claimed by Kearney, denying the motions to dissolve filed by the Kearneys, and ruling as a matter of law that Kearney's accounts at USAmeriBank are non-exempt and subject to Travelers' garnishment."  (Doc. 628 at 2).  In brief, Travelers argues that Kearney's claimed exemptions are without merit because: (1) the head of family wages exemption does not apply to any of the accounts because the funds are not wages or have lost their wages exemption because they were commingled; (2) the TBE exemption is inapplicable to the -0056 account, as that matter has already been adjudicated by Judge Kovachevich in the Regions case; (3) the joint accounts are not exempt because they are joint accounts with rights

8

of survivorship and Kearney has control over these funds; (4) the Kearneys have previously stipulated to garnishment in the Regions case effectively waiving their rights to claim exemption; and (5) the "IRA account" is solely owned by Kearney and he waived his right to claim exemption on this account.  (*See* Doc. 628).[7]

By its second motion (Doc. 643), Travelers seeks summary judgment as to the claims raised by FTBB and Moose.  Travelers asserts that any claim of priority asserted by FTBB by virtue of Regions' prior writ fails because: (1) that writ of garnishment automatically dissolved by operation of law; (2) Regions released the claims it had as to Kearney prior to its assignment to FTBB, leaving FTBB with no claim to the accounts; (3) FTBB's interest in the Regions writ is void due to its fraudulent and collusive purchase of the Regions judgment;[8] and (4) FTBB never had any claim to the IRA account because such account was not subject to any prior writ.  As for Moose, Travelers argues that it has no priority pursuant to its prior

---

[7]In support, Travelers has filed numerous filings from this case and pleadings, papers, and orders filed in the Regions case.  (Docs. 628-1 - 628-14).

[8]In April 2015, Kearney settled five litigation claims pending with Regions.  (Doc. 643-12).  As part of the overall settlement, FTBB agreed to purchase the Regions judgment against Kearney and others for $2.625 million and thereby assume Regions' position against Kearney.  (Doc. 643-8).  Kearney, his wife, his two sons, and brother signed off and agreed not to oppose Regions' garnishment of the USAmeriBank accounts.  (Doc. 643-12 at 16-24).  Travelers maintains this sale and assignment was collusive and fraudulent.

UCC-1 filing because its secured interest was never perfected as against the subject accounts. *Id.*[9]

Bing Kearney has filed a motion for summary judgment (Doc. 645), arguing that his TBE and retirement funds exemptions should be upheld.  In particular, he asserts that the -0056 account is held with his wife Tonya, by TBE, notwithstanding the contrary ruling by Judge Kovachevich.  By his argument, Judge Kovachevich's Order is not binding on this court because the doctrine of collateral estoppel does not apply.  Further, he disputes Travelers' assertion that he is estopped from claiming any exemptions to the joint accounts because he stipulated to Regions' motion for entry of final summary judgment in the Regions case.  By his argument, the stipulation was part of a global mediated settlement agreement and involves no admission that the funds were subject to garnishment.  With regard Account -1122, he argues that such is traditional IRA account subject to exemption under Fla. Stat. § 222.21(2).

Similarly, several of Kearney's family members, Tonya Kearney, Charles Wesley Kearney, III, Clayton Whitman Kearney, and Bryan G. Kearney (collectively the "Interested Parties"), have moved for summary judgment.  (Doc. 634).  They claim that the accounts ending in -3695, -0129, -0302, -0020, and -7939 are not owned by Bing Kearney, and therefore, are not subject to garnishment by Travelers.  Their motion is supported by an

---

[9]Once again, in support, Travelers has provided numerous submissions, including pleadings, papers, and orders filed in this and the Regions case; deposition transcripts of James Reed, John Anthony (counsel for Regions), Bing Kearney, Clayton Kearney, and Tonya Nuhfer-Kearney; the operating agreement for Moose; incorporation papers for FTBB; settlement documents from the Regions case and sale and assignment of the Regions judgment; and certain attorney communications.  (Docs. 643-1 - 643-27).

affidavit from Kearney attesting that he is neither the legal nor equitable owner of these accounts and that he is "only and always been a 'convenient signer' on these accounts for the convenience and benefit of the Interested Parties."  (Doc. 634-1).  They too dispute Travelers' assertion that they waived any claim of exemption to the joint accounts by stipulating to summary judgment on the writ in the Regions case.

Finally, FTBB moves for partial summary judgment as to Travelers' Writ, "as that writ applies to [Kearneys' TBE account] with his wife, Tonya Kearney, ... and as that writ applies to [Kearney's] traditional individual retirement account, account ending in -1122." (Doc. 644 at 2).  FTBB urges that "[i]n the event the Court determines that the USAmeriBank account funds are not exempt from garnishment, then [FTBB] asserts a priority claim to the funds." (Doc. 644 at 5).[6]  FTBB's claim of priority is based factually on Regions' sale and assignment of its judgment against Kearney and others to FTBB in April 2015. Consequently, because the Regions writ was first in time, FTBB takes Regions' position and, thus, has priority over Travelers' Writ.  It also urges that the Court can determine as a matter of law that Regions' assignment to FTBB did not constitute a fraudulent or collusive transaction, nor was it a sham.[7]

---

[6]By and large, FTBB's motion deals with the validity of the assignment of judgment it received from Regions and why it should have a priority claim to the funds.  Because the motion largely relates to the issues raised in the proceedings supplementary against FTBB, such matters will be addressed therein.

[7]This motion is supported by copies of settlement documents and pleadings in the Regions case, as well as affidavits from James Reed and Kearney and an excerpt from the deposition of Travelers' corporate representative.  (Docs. 644-1 - 644-9).

Suffice it to say that each of the motions is responded to and opposed essentially for reasons asserted by Travelers, Kearney, the Interested Parties, and/or FTBB in their respective motions.

The motions to dissolve the writs (Docs. 595, 596, 597) and the responses thereto (Docs. 603, 604, 605) raise two additional issues that are addressed in this Report and Recommendation. Each of the motions asserts that Moose has priority over Travelers' Writ because of a UCC-1 filing by Moose in August 2012 and that FTBB has priority to the funds by virtue of the first-in-time garnishment in the Regions case.[8]  Travelers responds that Moose's security interest under the UCC-1 was never perfected as to the funds in these accounts and thus Moose has no claim for priority over the Writ. Moreover, Travelers claims that neither Moose nor FTBB has standing to bring a motion to dissolve.

## IV. Discussion

At the outset, certain of the issues raised by the motions are not resolved on this Report and Recommendation. First and foremost, Travelers' claims of fraud and collusion regarding FTBB's April 2015 purchase of the Regions judgment and FTBB's claim of priority based thereon are not addressed herein. These claims are left for further

---

[8]In the Interested Parties' motion to dissolve the Writ, they urge that the Travelers' Writ does not have priority over Moose or FTBB because of Moose's UCC-1 and because of Regions' sale and assignment of the Regions' judgment and its priority position to FTBB. While they oppose setting aside the Regions settlement, they state that if the Court does so or otherwise finds that Travelers has priority, they reserve their (unspecified) rights.  (Doc. 597). Bing Kearney makes similar arguments, regarding Moose and FTBB's priority to the funds and generally reasserts his claim of entitlement to the USAmeriBank funds.  (Doc. 596).

consideration either at the final hearing on the proceedings supplementary or on the cross-motions for summary judgment filed in those proceedings.[9]

Nor do I resolve the claims as to Account -1122, identified by USAmeriBank as a "traditional IRA account."  The issue of whether this account qualifies as an exempt IRA account and any issue related to priority to this account are not reached in this Report and Recommendation.  Discovery remains ongoing as to Account -1122, and ruling on the motions for summary judgment should be denied without prejudice with the right to re-file following reasonable discovery.[10]

On the other hand, I do find that the Court can resolve certain issues related to the Kearneys:

(A) Kearney's claim of TBE exemption and collateral estoppel;

(B) Travelers' claim that the Kearneys have waived and/or are judicially estopped from arguing the accounts are not subject to garnishment;

---

[9]To the extent that the motions assert priority claims as between Travelers and FTBB and/or Regions as to the subject accounts, the motions should be denied because such claims are more properly resolved within the proceedings supplementary.

[10]Account -1122, is, according to USAmeriBank, an IRA account solely owned by Kearney and is not subject to any prior writ of garnishment.  (Doc. 577).  Travelers disputes that the funds are exempt.

Section 222.21(2), Florida Statutes, provides for an exemption from creditors' claims of funds and accounts maintained 'in accordance with a plan or governing instrument that has been determined by the Internal Revenue Service to be exempt from taxation' under Section 408 (among other provisions) of the Internal Revenue Code.  Fla. Stat. § 222.21(2)(a).

Kearney's claim is supported by two affidavits and may well have merit.  However, in light of the late addition of this claim of exemption by Kearney, the Court has permitted Travelers time to conduct reasonable discovery on whether the account qualifies as a true IRA account.

(C) Kearney's claim of head of family exemption; and

(D) the Kearneys' claims that the joint accounts are not subject to garnishment.

Additionally, I find that certain limited priority issues and issues raised by the motions to dissolve can also be resolved:

(E) Moose's claim to priority based on its UCC-1;

(F) FTBB's standing to bring a motion to dissolve on these motions;

(G) whether the Regions writ, now assumed by FTBB, dissolved by operation of law; and

(H) the legal effect of Regions' release of Kearney and its assignment of judgment to FTBB.

Each of these issues is addressed in turn below.

### A. TBE and Collateral Estoppel (Account -0056)

As outlined above, one of Kearney's claimed exemptions was on the basis of tenancy by the entireties.  Travelers argues that TBE exemption on the funds in the -0056 account has already been decided by Judge Kovachevich in the Regions case by her Order dated March 7, 2015 (*see* Doc. 628-4 at 35) and collateral estoppel bars Kearney from relitigating the issue.

In response, Kearney denies that he is collaterally estopped from again asserting the TBE exemption because there was no judgment entered in the Regions case.  Kearney maintains that a critical element for the application of collateral estoppel is that the prior determination of the issue must have been a critical and necessary part of the judgment, *i.e.*, a

judgment must have been entered.  In the Regions case, no final judgment was entered on the TBE issue; thus, Kearney argues collateral estoppel cannot apply.[11]  (Doc. 644).

As an initial matter, although Kearney broadly claimed a TBE exemption in response to the Writ, such exemption can only apply to the -0056 account as a matter of law.[12] USAmeriBank's answer reflects – and Kearney does not dispute on these motions – that the remaining joint accounts are multi-party accounts with other family members and cannot be held as TBE.  Moreover, in this litigation, Kearney has disclaimed any equitable or legal ownership in any of the remaining joint accounts.  The remaining joint accounts are addressed in section IV(D) below.

As for the issue of collateral estoppel, the Court applies federal law in this case. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1179 (11th Cir. 2013) ("This Court has unambiguously held, 'federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction.'") (quoting *CSX Transp., Inc.*

---

[11]Kearney does not dispute any of the other elements of collateral estoppel.

[12]The -0056 account is the only account held solely by Kearney and his wife Tonya. Tenancy by the entireties can only apply to assets held by a husband and wife.  As explained by the Florida Supreme Court in *Beal Bank, SSB v. Almand & Associates*, 780 So. 2d 45, 52 (Fla. 2001):

> Property held as a tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously);(5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).   Because of the sixth characteristic–unity of marriage–a tenancy by the entireties is a form of ownership unique to married couples.

(internal citations omitted).

15

*v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003); *see also Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984) ("When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law.").

"Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). Issue preclusion or collateral estoppel forecloses the relitigation of issues that have been previously litigated and decided. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003); *see also Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (citing *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535-36 (5th Cir. 1978)) ("Collateral estoppel precludes a party from relitigating an issue of ultimate fact that has already been decided in a prior adjudication").

As a general matter, "[a] party asking the court to apply estoppel must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue ... must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 (11th Cir. 2013) (internal citation and quotation marks omitted). "The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *Matter of McWhorter*, 887 F.2d at 1566 (citing *Matter of Merrill*, 594 F.2d 1064, 1067 (5th Cir. 1979). Ultimately,

the decision whether to apply collateral estoppel involves equitable considerations and is subject to the court's discretion.  *See id.*

Here, Kearney claims that because Judge Kovachevich's March 7 Order was not final as no judgment was entered, Travelers may not invoke collateral estoppel.  While Kearney is correct that traditional res judicata requires a final judgment, "[i]t is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion."  *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000); *see also In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1253 (11th Cir. 2006).  "[F]or purposes of issue preclusion ... final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  *Christo* at 1339 n.47 (quoting Restatement (Second) Judgments § 13).[13]  A prior decision may be given collateral-estoppel effect so long as it bears "sufficient indicia of finality."  *Bayshore Ford Trucks Sales, Inc.* at 1253.

In *Christo*, the Eleventh Circuit found that the district court sufficiently indicated that its finding was final because it "considered a wide range of evidence from all concerned parties and wrote a substantial order in which it explained its findings," explicitly "put the

---

[13]As explained in the Restatement: "[T]he court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered.  Thus preclusion should be refused if the decision was avowedly tentative.  On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.  The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision."  Restatement (Second) of Judgments § 13, comment g (1982).

parties on notice that the order could have preclusive effect," and "considered those findings final." 223 F.3d at 1339. In contrast, in *Bayshore*, the Court found, "Unlike *Christo,* no signals of finality were sent to the parties .... [The order] made no indication of either the finality or the preclusive effect of its ruling." 471 F.3d at 1254.

Here, Judge Kovachevich's Order gives sufficient indicia of finality. Judge Kovachevich concluded:

> [G]iven that all other unities are present, the 056 account was held as a joint tenant with right of survivorship account.
>
> The Court sustains the objection of [Regions] as to whether the signature card was ambiguous, and as to the presence of an express disclaimer. As a matter of law, the date a bank account is opened is the operative date for establishing ownership of a financial account. (citation omitted). Defendant Kearney has not shown the presence of fraud that would cast doubt on the intent expressed in the signature card. Based on the evidentiary hearing, the Court has resolved only the ownership of the 056 account. The Court has determined the 056 account is not exempt.
>
> ***
>
> Since the Court has determined that the 056 USAmeriBank account is not held as TBE, the account is not exempt.
>
> As to the remaining five accounts at USAmeriBank ... the ownership of the funds in those accounts is disputed, and is beyond the scope of the Report and Recommendation .... Before a final judgment authorizing the judgment creditor to reach the funds held by the garnishee is entered, the interests of the joint depositor in the funds should be conclusively determined and the applicable law applied thereto.

(Doc. 628-4 at 35-36).

By a fair reading of this Order, the judge considered a wide range of evidence and wrote a lengthy order in which she explained her findings and conclusions. There is no indication that Judge Kovachevich intended her ruling on the -0056 account as something less

18

than a final decision as to the merits of Kearney's claimed TBE exemption. Stated otherwise, the substantive issues relating to the -0056 account and the claimed TBE exemption were fully and finally resolved. Neither Kearney nor his wife Tonya moved for reconsideration of the Order. While Judge Kovachevich did explicitly reserve entry of final judgment because of remaining disputed issues as to the other accounts held by USAmeriBank, this Order is fairly read as the court's final ruling on matter of the TBE exemption.

Thus, I find sufficient finality in the Order to conclude that Kearney as well as the Interested Parties are collaterally estopped from relitigating the TBE exemption in these proceedings. Traveler's motion (Doc. 628) should be **granted in part** as to Kearney's claim of TBE exemption for the -0056 account.[14] Simply stated, because Judge Kovachevich has already decided the matter, the -0056 account is not exempt from garnishment.[15]

## B. Waiver or Judicial Estoppel

On the other hand, Travelers' argument that the Kearneys have admitted the subject funds are subject to garnishment and that they are judicially estopped from asserting otherwise is unpersuasive. As noted above, Travelers contends that the Kearneys have admitted the subject accounts are not exempt by entering into a stipulation in the Regions case that Regions' motion for summary judgment in garnishment be granted. Accordingly, it

---

[14]Should the district judge disagree that collateral estoppel applies, the cross motions (Docs. 628 and 645) should be denied on this issue and the matter reset for an evidentiary hearing. Barring the application collateral estoppel, I find the factual disputes regarding the -0056 account would prevent a ruling as a matter of law.

[15]To the extent that Kearney (Doc. 645) and the Interested Parties (Doc. 634) sought a contrary ruling, their motions should be **denied** in this regard.

argues that Kearney and the Interested Parties are judicially estopped from claiming in this proceeding that the subject accounts are exempt.  (*See* Doc. 628-6).

Kearney and the Interested Parties acknowledge that they signed a Stipulation to grant Regions Bank's Motion for Final Summary Judgment in Garnishment and a Stipulated Motion for Final Summary Judgment in Garnishment (*see* Docs. 664 at 9 and 634 at 7-8), but all contend that this was done as part of the global settlement agreement between the Kearneys and Regions and is not a waiver of their rights to assert ownership in the instant case.  By their arguments, they are not judicially estopped from asserting a contrary position in this litigation.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process."  *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  The Eleventh Circuit explained:

> In *New Hampshire*, the Supreme Court noted that although the circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle, courts have traditionally looked at three basic factors: 1) whether a party's later position was clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005) (citing *New Hampshire,* 532 U.S. at 750-51).

Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law. *Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925, 930 (11th Cir. 1995).

The Florida Supreme Court has explained: "Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings. The doctrine prevents parties from making a mockery of justice by inconsistent pleadings and playing fast and loose with the courts." *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001) (internal quotations and citations omitted). Significantly, Florida courts (and the majority of courts in general) all appear to agree that judicial estoppel does not apply to prior claims resolved by settlement. *Brown & Brown, Inc. v. Sch. Bd. of Hamilton Cty.*, 97 So. 3d 918, 920-21 (Fla. Dist. Ct. App. 2012) (collecting cases) ("Where, as in the instant case, the prior claim was resolved by settlement, we believe the alleged prior inconsistent position cannot be viewed as having been successfully asserted").

Here, the record reflects that on May 1, 2015, Regions Bank, Bing Kearney, Tonya Kearney, Charles W. Kearney III, Clayton Kearney, and Bryan Kearney filed a Stipulation to Grant Regions Bank's Motion for Final Summary Judgment in Garnishment. (Doc. 634-5). Therein, the parties stipulated to "all relief requested by [Regions] in the Summary Judgment Motion, and agree[d] that a final summary judgment in garnishment [as to the USAmeriBank accounts] shall be entered in favor of Plaintiff." (*Id.* at § 7). These same parties filed a Stipulated Motion for Final Summary Judgment in Garnishment. (Doc. 634-6). As noted, no

21

final judgment in garnishment was entered, and FTBB's superseding Motion for Summary Judgment in Garnishment remains pending in the Regions case.

As asserted by the Kearneys – and uncontroverted by Travelers – the Stipulation was entered into as part of the global settlement agreement between Regions, Kearney, and his wife. By its plain terms, the Stipulation does not contain any express admission by Kearney or the Interested Parties that the subject accounts were subject to garnishment or that any signer expressly waived his or her claims.

Moreover, as set forth above, judicial estoppel does not apply to such a settlement and should not be applied here to effect a waiver of Kearney's claims of exemption or the joint account claims of the Interested Parties. Travelers' motion (Doc. 628), insofar as it seeks a ruling that Kearney and the Interested Parties have admitted the subject accounts are subject to garnishment and as a consequence they are estopped from asserting a contrary position in this litigation, should be **denied.**

### C. The Head of Family Exemption

As for the head of family exemption claimed by Kearney, Travelers' motion for summary judgment is well-taken. Kearney broadly claimed a head of family exemption under the Writ. (Docs. 583, 623). Travelers asserts that the head of family exemption is inapplicable to each of the subject accounts because the funds deposited therein are not wages or earnings of Kearney and, in any event, the deposits are more than six months old. (Doc. 628 at 14-17). Kearney, nor any of the Interested Parties, has addressed the matter in their responses or their cross-motions.

22

Florida Statute § 222.11(1)(c) defines the "head of family" as "any natural person who is providing more than one-half of the support for a child or other dependent." If a head of family earns less than $750 per week, the disposable earnings are exempt from attachment or garnishment; if a head of family earns more than $750 per week, the earnings may not be attached or garnished unless the person has agreed otherwise in writing. Fla. Stat. § 222.11(2)(a), (b). The statute further provides that "Earnings that are exempt under subsection (2) and are credited or deposited in any financial institution are exempt from attachment or garnishment <u>for 6 months</u> after the earnings are received by the financial institution if the funds can be traced and properly identified as earnings." Fla. Stat. § 222.11(3) (emphasis added). "A debtor claiming the head of family exemption has the burden of proving entitlement to this statutory exemption." *Ulisano v. Ulisano*, 154 So. 3d 507, 508 (Fla. Dist. Ct. App. 2015), reh'g denied (Jan. 23, 2015).

Here, Kearney has entirely failed to meet his burden that the head of family exemption applies to any of the subject accounts. As Travelers points out, as for the -0056 account, the affidavit from Kearney and his wife filed in the Regions case attests that the account was funded from two sources: a tax refund and a distribution from Star 103, Inc. – not from wages. (*See* Doc. 628-8). This is not controverted on Kearney's response, any other response, or any cross-motion.

Nor does Kearney make any showing that any of the other accounts were funded by his wages. (*See* Doc. 664). Indeed, Kearney has filed an affidavit in support of the Interested Parties' motion stating that he has no interest in the joint accounts (apart from the -0056 account). Quite simply, in this case, Kearney has disclaimed any interest in the -3695, -0129,

23

-0302, -0020,-and -7939 accounts and, moreover, he has failed to demonstrate by any competent evidence that the head of family exemption applies to any of the subject accounts. As such, Travelers' motion (Doc. 628) should be **granted in part** as to Kearney's head of family exemption.

### D. The Remaining Joint Accounts (-3695, -0129, -0302, -0020, and -7939)

As to the -3695, -0129, -0302, -0020, -7939 accounts, it appears undisputed that each is held as a joint tenancy with rights of survivorship.[16]  While the parties appear not to dispute the legal implications of such *viz a viz* a garnishment action, they do dispute the ownership of these accounts.

The Interested Parties assert that the accounts are not owned by Bing Kearney and therefore are not subject to garnishment by Travelers.  (Doc. 634 at 6).  In support, they proffer the Affidavit of Bing Kearney disavowing ownership of the accounts.  In this Affidavit, Kearney states:

> I am not the legal or equitable owner of the accounts, or the funds contained in the account numbers ending in -3695, -0129, -0302, -0020, and -7939 ....
> I have only and always been a "convenient signer" on the account numbers ending in -3695, -0129, -0302, -0020, and -7939 for the convenience and benefit of the Interested Parties.

---

[16]Pursuant to Florida Statute, a joint account with rights of survivorship is the presumption for joint accounts held by persons other than husband and wife.  *See* Fla. Stat. §§ 655.78(1), 655.79(1).  No evidence has been presented to the Court to rebut the statutory presumptions.

(Doc. 634-1 at 2).[17]

Travelers argues Kearney's Affidavit should be set aside as a sham.  It points out in its response that Kearney's self-serving Affidavit is contradicted, at least in part, by an affidavit he filed in the Regions case, in which he asserted that accounts -3695 and -0129 were his personal checking and savings accounts, respectively.  Travelers proffers evidence from the Regions case, including an affidavit and testimony by Kearney that the -3695 and -0129 accounts were personal accounts used by he and his wife.  Moreover, it also proffers records and testimony to show that Kearney used the -3695, -0129, and the -0302 accounts for his own benefit.  (*See* Doc. 628 at 7-9; 628-8; 628-10 at 180-82; 628-13; *see also* Docs. 656 at 5-6, 656-3, 656-4).  Because Kearney's Affidavit in this case directly contradicts the Regions affidavit and he offers no explanation for the direct contradiction, Travelers argues it should be set aside as a sham.[18]  (Doc. 656 at 12-13).

───────────────

[17]None of the Interested Parties has signed an affidavit or submitted other evidence to this Court regarding their ownership of the funds in these accounts.  Rather, they rely on Kearney's Affidavit.

Similarly, in support of their motion to dissolve the Writ, the affidavits signed by Tonya Kearney, Bryan G. Kearney, and Charles Wesley Kearney, III, do not specifically identify their ownership interest in the accounts; rather, they each broadly state:

> In the event and to the extent that the Court sets aside or disregards the Mediation Settlement ... then I reassert my objection to any Writ of Garnishment of the USAmeriBank garnished accounts.  Furthermore, I assert my claim of entitlement to the USAmeriBank garnished accounts.

(Docs. 597-1, 597-2, 597-3).

[18]Travelers cites *Durden v. Citicorp Trust Bank, FSB*, 2009 WL 6499365, *8 (M.D. Fla. 2008), in which the Court found an affidavit that "affirmatively contradicts prior testimony without any explanation" may be set aside as a sham.

In any event, Travelers claims that the record evidence shows that Kearney is more than a "convenient signer" on these accounts.  It cites Kearney's testimony in the Regions case where he admitted writing a $500,000.00 check drawn on the -0302 account to the U.S. Department of Treasury for a tax obligation and testimony that he transferred $20,000.00 from the -0129 account into the -0302 account.  (Doc. 656-4).  Apart from Kearney's Affidavit now disavowing any interest in the accounts, the Kearneys do not respond to Travelers' proffered evidence.  Nor have the Interested Parties proffered any evidence to show their individual ownership of any identifiable portion of the subject accounts which might be exempt from garnishment.  Thus, Travelers contends that the whole of the funds in these joint accounts are subject to the Writ.

"[F]or garnishment purposes, funds on deposit in a financial institution are presumed to belong to the person or entity named on the account." *Thomas J. Konrad & Associates, Inc. v. McCoy*, 705 So. 2d 948, 949 (Fla. Dist. Ct. App. 1998) (citing *Ginsberg v. Goldstein*, 404 So. 2d 1098, 1099 (Fla. Dist. Ct. App. 1981) (noting that "[f]or the purposes of garnishment a bank deposit *prima facie* belongs to the person in whose name it stands."); *see also* Fla. Stat. § 655.78(1) ("Unless otherwise expressly provided in a contract, agreement, or signature card executed in connection with the opening or maintenance of an account, including a certificate of deposit, a deposit account in the names of two or more persons may be paid to, or on the order of, either or any of such persons").  Unlike tenancy by the entireties, "[i]n a joint tenancy with right of survivorship, each tenant owns a separate share of the property and, for purposes of alienation, each share is presumed to be equal.  Thus, 'a creditor of one of the joint tenants may attach the joint tenant's portion of the property to

26

recover that joint tenant's individual debt.'" *United States v. Dorman*, 603 Fed. App'x 844, 846 (11th Cir. 2015) (quoting *Beal Bank,* 780 So. 2d at 53.[19]

First, with regard to accounts -3695 and -0129, the Court agrees that Kearney's Affidavit is wholly inconsistent with the prior evidence and testimony in the Regions case. In that case, Kearney swore in his affidavit that the -3695 account is he and his wife's personal checking account and that the -0129 account is their personal savings account. (Doc. 628-8 at 3). Tonya Kearney similarly swore that the -3695 account is their personal checking account and the -0129 is their personal savings account. (*Id.* at 13). The Kearneys further averred

---

[19]The Florida Supreme Court explained the distinction between tenancy by the entireties and joint tenancy as follows:

> When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it "per tout," meaning that each spouse holds the "whole or the entirety, and not a share, moiety, or divisible part." Thus, property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole. In a joint tenancy with right of survivorship, each person has only his or her own separate share ("per my"), which share is presumed to be equal for purposes of alienation; whereas, for purposes of survivorship, each joint tenant owns the whole ("per tout"), so that upon death the remainder of the estate passes to the survivor.
>
> Because of this distinction between each spouse owning the whole versus each owning a share, if property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt. However, when property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse.

*Beal Bank*, 780 So. 2d at 53.

that these two accounts were intended to be held TBE.  *Id.*[20]  Now, without explanation, Kearney claims he is and *always has been* a "convenient signer" on these two accounts, as well as the others.

With regard to accounts -0302 and -0129, by Travelers' proffer, uncontradicted evidence from the Regions case reveals Kearney had control over these accounts such that he wrote a $500,000.00 check drawn on the -0302 account to the U.S. Department of Treasury for a tax obligation and that he transferred $20,000.00 from the -0129 account into the -0302 account.  (Doc. 656-4).

The Court cannot reconcile Kearney's conflicting testimony and affidavits with the affidavit filed in this case.  Kearney has wholly failed to explain the inconsistencies.  Thus, the Court will disregard Kearney's Affidavit filed herein as a sham.  None of the Kearneys has proffered any other credible evidence to refute Travelers' assertions that Kearney has control and ownership of the joint accounts, including the -7939 account.[21]  Thus, it is presumed that the funds titled in his name belong to Kearney, and Kearney's creditors are entitled to garnishment of same.

---

[20]As noted above, these two accounts may not as a matter of law be determined TBE exempt property because they are also titled in the names of Kearney's sons, Charles Wesley Kearney III and Clayton Whitman Kearney.  *See Beal Bank,* 780 So. 2d at 52.

[21]Travelers does not specifically proffer any similar evidence demonstrating Kearney's control or ownership of Account -7939.  On the other hand, neither Kearney nor the Interested Parties offer any evidence – other than Kearney's sham Affidavit – regarding ownership. Accordingly, the Court presumes that the funds belong to Kearney, as he is a named owner on the account.

As such, Travelers' motion for summary judgment (Doc. 628) should be **granted in part** as it relates to accounts -3695, -0129, -0302, -0020, -7939, and the Interested Parties' motion for summary judgment (Doc. 656) should be **denied.**

### E. Moose Investments of Tampa Bay's UCC-1

Moose has moved to dissolve the Writ (Doc. 595), asserting that it filed a UCC-1 Security Financing Statement with the Florida Secured Registry Transaction Registry on August 6, 2012 (Doc. 595-1).  By virtue of this UCC-1, which was filed prior to the Writ at issue, Moose claims a superior security position and priority over Travelers with respect to the Writ.  Citing Florida Statute § 679.302(1) (sic)[22], it claims that because the UCC-1 was filed earlier in time to the Writ, its rights are "superior to the rights of any subsequent lien creditor."  (Doc. 595 at 4).

In its response to this motion to dissolve, as such pertains to Moose, Travelers claims that Moose's interest, if any, is unperfected and inferior to Travelers' interest.  (Doc. 604).  By its motion for summary judgment (again as such pertains to Moose), Travelers reiterates its argument that Moose's UCC-1 is unperfected and thus any claim it may have is inferior to that of Travelers.  (Doc. 643 at 22-25).  Moose did not file any response in opposition to

---

[22]There is no such statute, nor has there been since the Chapter was amended in 2001.  Chapter 679 generally provides the Uniform Commercial Code: Secured Transactions.  Part III of the Chapter deals with Perfection and Priority.  *See* Fla. Stat. §§ 679.3011, *et seq.* (2015).

Travelers' motion for summary judgment, nor did any other party respond to the arguments relating to Moose.[23]

At the hearing on February 17, 2016, counsel for Moose conceded the issue and abandoned the claim that the UCC-1 gave Moose priority to the USAmeriBank subject accounts.  Moreover, Moose has presented no evidence to this Court that it ever took control of the deposit accounts and thereby perfected its lien.  Nor has Moose presented any evidence that the deposit accounts at issue represent identifiable proceeds of the collateral, under section 679.3151(3) or (4).

In sum, because Moose presents no evidence to the Court that it holds a perfected lien as against these deposit accounts and given its abandonment of this claim, Travelers' Motion for Summary Judgment (Doc. 643) should be **granted in part** as it relates to the priority claim asserted by Moose by virtue of its UCC-1.  Further, the motions to dissolve the Writ (Docs. 595, 596 and 597), should be **denied** insofar as they urge Moose's priority on this basis.

### F. Standing of Moose and FTBB to dissolve the Writ

Travelers argues that, pursuant to Florida Statute § 77.07, only the "[t]he defendant and any other person having an ownership interest in the property, *as disclosed by the garnishee's answer*" may file a motion to dissolve.  (Doc. 604 at 6-8).  Since neither Moose nor FTBB were disclosed in USAmeriBank's answer, Travelers argues they lack standing under the statute and their motion to dissolve (Doc. 595) should be denied.  Moreover, since

---

[23]FTBB, which is owned by Moose, did not address the UCC-1 perfection or priority issues in its response either.  (*See* Doc. 663).

neither FTBB nor Moose were disclosed in USAmeriBank's answer, Travelers did not serve

them with the required notice under section 77.055, thus triggering any right to move for

dissolution.  *Id.*[24]  Neither Moose nor FTBB has addressed or responded to the matter of

standing in their written submissions.

      With respect to garnishment, the Florida Statutes provides two methods to assert

ownership to garnished property.  First, section 77.07 provides:

> The defendant and any other person having an ownership interest in the
> property, as disclosed by the garnishee's answer, shall file and serve a
> motion to dissolve the garnishment within 20 days after the date indicated
> in the certificate of service on the defendant and such other person of the
> plaintiff's notice required by s. 77.055, stating that any allegation in
> plaintiff's motion for writ is untrue.

Fla. Stat. § 77.07(2).

      Section 77.16 provides:

> If any person other than defendant claims that the debt due by a garnishee
> is due to that person and not to defendant, or that the property in the hands
> or possession of any garnishee is that person's property and shall make an
> affidavit to the effect, the court shall impanel a jury to determine the right
> of property between the claimant and plaintiff unless a jury is waived.

Fla. Stat. § 77.16(1); *see also Merriman Investments, LLC v. Ujowundu*, 123 So. 3d 1191,

1193 (Fla. Dist. Ct. App. 2013) ("Depending on the circumstance, the request to dissolve may

---

[24]In support, Travelers cites *Navon, Kopelman & O'Donnell, P.A. v. Synnex
Information Techs., Inc.*, 720 So. 2d 1167, 1168 (Fla. Dist. Ct. App. 1998) ("the statutory
right to move to dissolve the writ is granted only to the defendant and any other person having
an ownership interest in the property, *as disclosed by the garnishee's answer.* § 77.07(2)");
and *Regions Bank v. Hyman*, No. 8:09-CV-1841-T-17MAP, 2015 WL 1033915, at *9 (M.D.
Fla. Mar. 7, 2015) ("Until service of the Answer and Notice of right to move to dissolve
within twenty days of service, the right of the other owners of the garnished accounts to move
to dissolve is not triggered").

be made in either of two ways: (1) on motion of the debtor challenging the truth of the allegations in the creditor's petition for the writ, *see* § 77.07, Fla. Stat. (2001); or (2) on an affidavit of a third party claiming the garnished property belongs to the third party and not the debtor. *See* § 77.16, Fla. Stat. (2001)").

Here, FTBB and Moose filed a joint unverified motion to dissolve the Writ, "pursuant to Florida Statute 77.02(2)." (Doc. 595). The following day, Moose filed an affidavit "pursuant to Florida Statute 77.16." (Doc. 598).[25] FTBB did not file a similar affidavit. Thus, the threshold question presented is whether the unverified motion by FTBB is sufficient to permit FTBB to assert a claim of priority by way of the motion to dissolve the Writ.[26]

In *Sosa v. Leggett & Platt, Inc.*, 969 So. 2d 540, 541 (Fla. Dist. Ct. App. 2007), the Second District Court of Appeal stated: "Though he incorrectly filed the motion pursuant to section 77.07(2), Florida Statutes, it is clear from the substance of the motion that Sosa was attempting to assert a claim under section 77.16, Florida Statutes .... We therefore reverse the trial court's decision and remand with directions to hold an evidentiary hearing as to

---

[25]Therein, Moose asserts only that by reason of its UCC-1 filing, it maintains a priority position to that of Travelers on the Writ. *Id.*

[26]I conclude that Moose's affidavit satisfies the requirements of Florida Statute § 77.16 and that Travelers contention that it lacks standing to seek to dissolve the Writ is without merit. Although it filed an unverified motion to dissolve, Moose subsequently filed of an affidavit, specifically referencing section 77.16. In the circumstances, I see no reason why Moose's motion and subsequent affidavit should be deemed insufficient to satisfy the requirements of the Florida Statutes. That said, given Moose's concession that its UCC-1 filing does not give it priority to the subject accounts, the matter of Moose's standing is now moot and, as to Moose, the Motion to Dissolve (Doc. 595) should be **denied.**

ownership of the funds held in the Wachovia account." Importantly, in *Sosa*, the motion to dissolve was verified; thus, the court construed it as an affidavit under section 77.16.

In this case, FTBB was neither named in USAmeriBank's Answer, nor did it file a verified motion to dissolve nor any affidavit that can be construed to satisfy the requirements of section 77.16. As this Court has previously pointed out, Florida law prescribes that the garnishment statutes are to be strictly construed. *See, e.g., Gigliotti Contracting North, Inc. v. Traffic Control Products of N. Fla., Inc.*, 788 So. 2d 1013, 1016 (Fla. Dist. Ct. App. 2001); *Williams v. Espirito Santo Bank of Fla.*, 656 So. 2d 212, 213 (Fla. Dist. Ct. App. 1995). As such, the Court is obliged to find that FTBB failed to comply with the requirements of the statute. Travelers has challenged the sufficiency of FTBB's filings and FTBB has failed to respond to same. As a result, the Court finds that FTBB has failed to properly present a claim to the funds at issue here and FTBB's Motion to Dissolve (Doc. 595) should also be **denied.**[27]

### G. Dissolution of the Regions Writ

In its motion for summary judgment (Doc. 643), Travelers argues that the writ issued in the Regions case automatically dissolved by operation of law and, accordingly, FTBB's claim to priority because it has assumed Regions' position is without merit. In support, Travelers argues that, pursuant to the Florida garnishment statutes, a plaintiff must file a dismissal or motion for final judgment within six months after filing the writ of garnishment or the writ automatically dissolves. Fla. Stat. § 77.05(5). The Regions writ was re-served to

---

[27]However, it is important to note that whether FTBB has priority to the funds by virtue of its purchase and the assignment of the Regions judgment is a separate question, which the Court does not resolve on these motions.

cure a notice defect on March 10, 2015.  Thus, Travelers claims that the Regions writ

dissolved by operation of law six months after re-service – on September 10, 2015.  This is so

because FTBB withdrew its Motion for Final Judgment on the writ, and the Regions Court

found that the motion was administratively terminated by the Clerk.  Moreover, any argument

that the Regions court's stay of the proceedings saves the writ fails because the stay lapsed on

August 23, 2015, and was not reinstated until September 21, 2015.  By its argument, the

Regions writ automatically dissolved in that interim period.  (Doc. 643 at 12).  And, because

the Regions writ dissolved, it claims FTBB cannot assert priority by virtue of its purchase of

the Regions judgment and position.  (Doc. 643 at 11-13).

Essentially for the reasons set out in FTBB's response (Doc. 663 at 2-6), I find that

Travelers' argument that the Regions writ dissolved by operation of law on September 10,

2015, misconstrues the record in the Regions case and is without merit.

Florida Statute § 77.05(5), provides in pertinent part:

> If the plaintiff fails to file a dismissal or motion for final judgment within
> 6 months after filing the writ of garnishment, the writ shall automatically
> be dissolved and the garnishee shall be discharged from further liability
> under the writ. The plaintiff has the right to extend the writ for an additional
> 6 months by serving the garnishee and the defendant a notice of extension
> and filing in the underlying proceeding a certification of such service.

Fla. Stat. § 77.05(5).

Travelers' recitation of the course of proceedings in the Regions case to support its

argument is inaccurate.  Travelers fails to acknowledge that the referenced order by Judge

Kovachevich actually implicitly recognized that a docketing error had occurred.  The Order,

dated June 24, 2015, states, in relevant part:

34

> FTBB, LLC denies that FTBB, LLC has withdrawn the Motion for Final
> Judgment in Garnishment as to the funds held by USAmeribank (Dkt. 561).
> However, in filing its Notice of Withdrawal, FTBB, LLC linked the Notice
> with both documents (Dkts. 560, 561) and therefore both documents were
> administratively terminated by the Clerk of the Court.
> ***
> FTBB, LLC **shall resolve** the issue of the status of the Motion for Final
> Judgment in Garnishment (Dkt. 561) directly with the Clerk of Court.

(Regions case, Doc. 576 at 2-3) (emphasis in original).

Indeed, following entry of Judge Kovachevich's Order, FTBB's Motion for Final Judgment in Garnishment (Regions case, Doc. 561) was reopened by the Clerk of Court. The CM-ECF docket entry (reviewable only by the Court) states: "(Court only) ***Reopen Document 561 MOTION FOR FINAL JUDGMENT IN GARNISHMENT judgment per order 576 and notification from counsel. (JNB) (Entered: 06/30/2015)."

Further, in the same Order, Judge Kovachevich stayed those proceedings for a period of sixty days in light of the initiation of proceedings supplementary in the instant matter. (*Id.,* Doc. 576 at 3). The stay was thereafter extended "to February 22, 2016, or until a final resolution of proceedings supplementary in [the instant case], whichever occurs first." (*Id.,* Doc. 583). The stay in the Regions case has not been lifted as of the date of this writing and FTBB's motion remains pending.

Thus, a timely motion for final judgment remains pending in the Regions case and, by the plain language of Florida Statute § 77.05(5) this is all that is required to prevent a writ from automatically dissolving. As a result, Travelers' argument that the Regions writ dissolved by operation of law on September 10, 2015, fails, and its Motion for Summary Judgment (Doc. 643) should be **denied in part** as it relates to this dissolution argument.

35

## H. Regions' Release of Kearney and Assignment to FTBB

By its next argument, Travelers claims that Regions released its claims against Kearney before executing the sale and assignment of its judgment to FTBB. (Doc. 643 at 14-16). Travelers asserts that the Mediation Settlement Agreement (Doc. 643-12) between Kearney and Regions Bank, dated April 22, 2015, with an effective date of April 21, 2015, was expressly intended to resolve specified litigation including "any and all ancillary matters commenced within the [cases] or involving the same underlying nuclei of operative facts and legal issues." It included broad release language generally releasing Kearney "of and from any and all claims ...." The subsequent Confidential Judgment Purchase and Sale Agreement (Doc. 643-8) and the Assignment of Judgment (Doc. 643-9) executed on April 22 and 23, 2015, contained no effective date or retroactive application provision. As such, by Travelers argument, Regions released its claims against Kearney before it executed the sale and purchase agreement and the assignment to FTBB. Consequently, "the assignment of collection rights as to Kearney has no effect because a claim cannot be assigned after it has been released." (Doc. 643 at 14-16). Travelers urges that the documents should not be construed together as contemporaneous agreements because such requires that the documents be executed by the same parties. *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F. 3d 1060, 1067 (11th Cir. 2004). Here, the Mediation Settlement Agreement was between Mr. and Mrs. Kearney and Regions, while the Confidential Purchase and Sale Agreement and the Assignment of Judgment were between Regions and FTBB.

FTBB contends that Travelers' argument is without merit. It notes that the Mediation Settlement Agreement was part of a "global settlement" that included execution of the

36

Confidential Purchase and Sale Agreement and the Assignment of Judgment.  Although the documents were dated one to two days apart, the agreements were entered into contemporaneously with the intent of the parties that they would be interpreted and applied together to achieve the parties' desired outcome.  It urges that Travelers is inappropriately attempting to parse the agreements to achieve an absurd result that is inconsistent with the clear intent of the parties.  In any event, FTBB argues that disputed questions of fact regarding the interpretation of the agreement preclude entry of summary judgment.  (Doc. 663 at 6-9).

It is a fundamental proposition of contract law that agreements are to be construed in accordance with the intentions of the parties.  *See, e.g., Brown v. Beckwith*, 60 Fla. 310, 312, 53 So. 542, 542 (1910) ("In construing a contract the leading object is to ascertain and effectuate the intention of the parties."); *Bal Harbour Shops, Inc. v. Greenleaf & Crosby Co.*, 274 So. 2d 13, 15 (Fla. Dist. Ct. App. 1973) ("It is a cardinal rule in the construction of contracts that the intention of the parties thereto is to govern.").[28]

"Courts must 'construe contracts in such a way as to give reasonable meaning to all provisions,' rather than leaving part of the contract useless." *Publix Super Mkts., Inc. v. Wilder Corp. of Del.,* 876 So. 2d 652, 654 (Fla. Dist. Ct. App. 2004) (quoting *Hardwick*

---

[28]"Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."  11 Williston on Contracts § 30:6 (4th ed. 2012) (citation omitted).  If, however, "a written contract is ambiguous, its meaning is a question of fact, requiring a determination of the intent of parties in entering the contract.  The jury or other trier of fact, rather than the court as a matter of law, must interpret the contract's terms in light of the apparent purpose of the contract as a whole, the rules of contract construction, and relevant extrinsic evidence of the parties' intent and the meaning of the words that they used."  *Id.* at § 30:7.

*Props., Inc. v. Newbern,* 711 So. 2d 35, 40 (Fla. Dist. Ct. App. 1998)).  "When interpreting a contract, a court should ascribe terms their plain meaning and attempt to place itself as close as possible to the position occupied by the parties at the time the contract was executed, keeping in mind the goal to be accomplished by the agreement."  *Conway v. Conway,* 111 So. 3d 925, 927 (Fla. Dist. Ct. App. 2013) (citing *Delissio v. Delissio,* 821 So. 2d 350, 353 (Fla. Dist. Ct. App. 2002)).  And, "a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction."  *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. Dist. Ct. App. 2003).

Moreover, the intent of the parties may be determined by looking at interrelated documents.  *See Murphy v. Chitty*, 739 So. 2d 697 (Fla. Dist. Ct. App. 1999).  As the Florida Supreme Court has noted: "It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  *OBS Co. v. Pace Const. Corp.*, 558 So. 2d 404, 406 (Fla. 1990) (citations omitted).

Here, I initially observe that Travelers asks this Court to interpret and construe an agreement entered into between Kearney, his wife, and Regions to resolve five pending suits by Regions against the Kearneys – suits in which Travelers is not a party and in which it played no role in the negotiations or settlement.  In practical effect, it asks for a judicial declaration that, as a matter of law, the Mediation Settlement Agreement between the Kearneys and Regions was separate and apart from the other agreements and that it did not contemplate nor intend to give effect to the Confidential Purchase and Sale Agreement and/or the Assignment of Judgment.  While Travelers proffers the Mediation Settlement Agreement,

as well as the Confidential Purchase and Sale Agreement and Assignment of Judgment on this motion, Travelers is not rightly in a position to know or argue the intent of the parties. Rather, Travelers rests its argument on the blanket assertion that the agreements should only be construed together if they were executed contemporaneously by the same parties.  I do not read the law to be so absolute.

Rather, upon consideration, I find the documents reflect a contemporaneous agreement requiring the agreements be construed as one.  For example, paragraph 7 of the Mediation Settlement Agreement, entitled "Bank's Release of Kearney Released Parties," begins: "Except with respect to obligations arising under or memorialized by this Mediation Agreement....[Regions generally releases Kearney....]"  (Doc. 663-2).  Although Travelers attempts to frame the release language as exceptionally broad and without representation or exception, this is simply not borne out by a plain reading of this release provision.

Moreover, the Mediation Settlement Agreement goes on to specifically reference the agreement for sale and assignment to FTBB (referred to therein as the Confidential Judgment Purchase and Sale Agreement), and provides that the Kearneys' representations are a "material inducement" to the settlement and Regions' willingness to enter into the Confidential Judgment Purchase and Sale Agreement.  (Doc. 663-2 at 5).  While the effective date of the Confidential Judgment Purchase and Sale Agreement was left blank, the signatures are dated April 22 and 23, 2015, and the agreement states that "the consummation of the sale and purchase pursuant to this Agreement ... shall occur on or before April 21, 2015" (Doc. 643-8 at 3) – the same day as the effective date of the Mediation Settlement Agreement. Thus, the documents make express reference to one another, and it appears uncontroverted by

39

any competent evidence that the parties intended the documents to be construed together. There is simply no evidence proffered to the contrary.

On this conclusion, Travelers' motion (Doc. 643) seeking a ruling as a matter of law that Regions released all claims against Kearney before it transferred by sale and assignment its judgment to FTBB should be **denied**.[29]

## V. Conclusion

Accordingly, as set forth above, it is **RECOMMENDED** that:

**(1) Travelers' Motion for Summary Judgment in Garnishment Overruling Exemption and Joint Account (Doc. 628) be GRANTED in part and DENIED in part;**

**(2) Travelers' Motion for Summary Judgment in Garnishment as to Claims of FTBB, LLC, and Moose Investments of Tampa, LLC (Doc. 643) be GRANTED in part and DENIED in part;**

**(3) Interested Parties' Motion for Summary Judgment (Doc. 634) be DENIED;**

**(4) FTBB, LLC's Motion for Summary Judgment (Doc. 644) be DENIED;**

**(5) Bing Charles W. Kearney's Motion for Summary Judgment (Doc. 645) be DENIED.**

---

[29]FTBB's Motion for Summary Judgment (Doc. 644) seeks summary judgment on Travelers' Writ as it related to Kearney's TBE claim on account -056 and account -1122, the purported IRA account.  FTBB fails to identify any right it has for such relief, and, as determined above, FTBB failed to file the necessary affidavit under Florida Statute § 77.16 to grant it a right move to dissolve the Writ.

FTBB also seeks a ruling as a matter of law that its purchase of the Regions' judgment was neither collusive nor fraudulent.  As set forth above, a ruling on that issue is left for determination after a hearing in the proceedings supplementary or on motions for summary judgment pending in that proceeding.

Given the findings and recommendations above, the Court further **RECOMMENDS** that:

**(6) Moose Investments and FTBB's Motion to Dissolve Second Writ of Garnishment (Doc. 595)** be **DENIED;**

**(7) Bing Charles W. Kearney's Motion to Dissolve Second Writ of Garnishment (Doc. 596)** be **DENIED;** and

**(8) Interested Parties' Motion to Dissolve Second Writ of Garnishment (Doc. 597)** be **DENIED.**[30]

If there remain issues as to the USAmeriBank garnishment after resolution of the proceedings supplementary, the Court will schedule the matter for a final hearing on subsequent and separate notice.

Respectfully submitted this
17th day of March 2016.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[30]To the extent that the three motions to dissolve assert FTBB's priority to Travelers' Writ based on FTBB's purchase of the Regions judgment, such does not appear a lawful ground to dissolve the Writ and, in any event, the dispute over FTBB's purchase of the Regions' judgment is not addressed in this Report and Recommendation.

41

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of record