**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


**KEARNEY CONSTRUCTION COMPANY**
**LLC,**

        **Plaintiff,**

**v.**                                           **Case No. 8:09-cv-1850-T-30TBM**

**TRAVELERS CASUALTY & SURETY**
**COMPANY OF AMERICA,**

        **Defendant/Third Party Plaintiff,**

**v.**

**KEARNEY CONSTRUCTION COMPANY,**
**LLC, et. al,**

        **Third Party Defendants.**
_____/

**TRAVELERS CASUALTY & SURETY**
**COMPANY OF AMERICA,**

        **Plaintiff,**

**v.**

**FTBB, LLC,**

        **Defendant.**
_____/


**REPORT AND RECOMMENDATION**
**IN PROCEEDINGS SUPPLEMENTARY**

      THIS CAUSE is before the Court on referral for a Report and Recommendation on

summary judgment motions filed in these proceedings supplementary:

(1) Travelers' Notice of Adoption of Motion for Final Summary Judgment (Doc. 670) and FTBB, LLC's response in opposition (Doc 673);[1] and

(2) FTBB, LLC's Motion for Summary Judgment on Amended Complaint for Proceedings Supplementary (Doc. 671) and Travelers' response in opposition (Doc. 674);

A hearing was conducted on February 22, 2016.

## I. Procedural History

The pertinent procedural history and background has been detailed previously in the Report and Recommendation on the USAmeriBank garnishment matter.  (*See* Doc. 711).  A brief review is useful here.

The current proceedings supplementary derive from circumstances and events in two post-judgment proceedings in this Court – the instant action (the "Travelers case"), as well as a separate action in this District, Case No. 8:09-cv-1841-T-17MAP (the "Regions case") before the Honorable Elizabeth A. Kovachevich.  The underlying suits in both actions resulted in significant judgments against Bing Charles W. Kearney ("Kearney") and others which in turn resulted in competing creditors attempting to collect upon their respective judgments.  These proceedings supplementary pit Travelers against FTBB, LLC ("FTBB"), an entity owned and controlled by Kearney's son, Clayton Kearney.[2]  By reason of a settlement reached in the Regions case, FTBB now claims to own the Regions judgment and to have priority over Travelers in its efforts to garnish funds held by USAmeriBank.

---

[1]Travelers adopts in whole the arguments it made on its earlier Motion for Final Summary Judgment in Garnishment as to Claims by FTBB, LLC and Moose Investments of Tampa, LLC to the garnished accounts.  (Doc. 643).

[2]FTBB is managed by Moose Investments of Tampa Bay, LLC, ("Moose") which in turn is owned by Bing Kearney's son, Clayton Kearney.

2

In this case, on October 28, 2011, the district court entered Judgment (Doc. 244) in favor of Travelers and against Kearney, and others, in the amount of $3,750,000.00.  Despite its efforts to collect on the Judgment from Kearney, Travelers has been largely unable to do so.  In its collection efforts, Travelers has garnished several bank accounts, including Kearney's accounts held by USAmeriBank.  Travelers first requested a writ of garnishment directed to USAmeriBank on August 26, 2014, which this Court granted on September 9, 2014.  (Docs. 272, 274).  Kearney and certain of his family members opposed the garnishment, and for a variety of reasons, including repeated requests for continuances, no judicial resolution or final judgment in garnishment was reached on this first writ.

A second writ of garnishment directed to USAmeriBank issued on or about July 23, 2015.  (Doc. 556).  USAmeriBank answered the writ declaring it was indebted to Kearney in the total amount of $1,158,037.38.  (Doc. 577).  As outlined in the previous Report and Recommendation (Doc. 711), considerable litigation ensued related to the writ, with Kearney, family members, and FTBB and Moose each seeking to dissolve the writ.  Among the grounds for the motions was the claim that FTBB had priority to the USAmeriBank garnished funds by reason of its purchase and the assignment of the Regions judgment.  While the motions were largely resolved in favor of Travelers, the priority issue remains in dispute.

In the Regions case, Regions obtained a judgment against Kearney and others in September 2012 in the amount of $3,407,620.35.  (*See* Regions case, Doc. 177).  On May 17, 2013, in an effort to collect on the judgment, Regions served a writ of garnishment on

3

USAmeriBank, which in turn answered that it was indebted to Kearney in the amount of $700,022.29.[3]  (*See* Regions case, Docs. 206, 212).

While the litigation ensued on Travelers' writ, in April 2015 Kearney and Regions reached a global settlement of a number of claims, including a resolution of the $3,407,620.35 judgment against Kearney.  Among other agreements to this settlement, Regions agreed to sell and assign its judgment to FTBB for $2,625,000.00.  On May 5, 2015, subsequent to the purchase and assignment, FTBB was substituted as party-plaintiff in the Regions case. (Regions case, Doc. 549).  FTBB then sought final judgment in garnishment on the Regions' writ.  (*See id.*, Doc. 561).[4]

In June 2015, in an attempt to challenge FTBB's claim of priority to the garnished accounts held by USAmeriBank, Travelers moved for proceedings supplementary in this action and to implead FTBB (Doc. 526), which this Court granted (Doc. 533).

On August 25, 2015, Travelers filed an Amended Complaint in Execution of Judgment to Determine Priority of Claims, to Void Transfer or Assignment of Judgment, for Equitable Subordination and for Other Relief Against FTBB, LLC, pursuant to Florida Statutes § 56.29 and Other Applicable Law.  (Doc. 591).  Travelers asserts three counts in its Amended Complaint captioned as follows:

---

[3]The accounts later identified by USAmeriBank (Regions case, Doc. 484) are the same as the accounts identified in answer to the Traveler's writ, with the exception of an IRA account listed in the answer to Travelers writ which was, for unexplained reasons, not listed in the answer to the Regions writ.

[4]In the Regions case, Judge Kovachevich has stayed the proceedings related to the USAmeriBank garnishment pending resolution of the proceedings supplementary in this instant case.  (Regions case, Docs. 583, 586).

> (1) The Kearney-Regions settlement agreement released the claims allegedly assigned to FTBB, including the Regions garnishment and, therefore, FTBB does not have priority over any claim by Travelers, including claims to the USAmeriBank garnished accounts;
>
> (2) The alleged assignment to FTBB should be set aside or disregarded as a fraudulent or collusive transaction or a sham; and
>
> (3) The alleged assignment to FTBB should be equitably subordinated to Travelers' judgment and rights, including Travelers' garnishment of the USAmeriBank accounts.

(Doc. 591).

FTBB filed its Answer and Affirmative Defenses to the Amended Complaint on September 8, 2015, denying the allegations and asserting various affirmative defenses. (Doc. 600).

## II. Summary of Arguments

For the purposes of summary judgment on the proceedings supplementary, Travelers has adopted the arguments previously made with respect to summary judgment as to the USAmeriBank Writ of Garnishment. (*See* Doc. 670, adopting the arguments set forth in Doc. 643). Pertinent here, as that motion relates to FTBB, Travelers argues:

(1) FTBB does not have priority over Travelers as to the accounts because the Regions writ dissolved by operation of law;

(2) FTBB has no claim to the IRA account pursuant to the Regions writ;

(3) Regions released the claims it had as to Kearney before executing the Assignment to FTBB, and therefore FTBB received no rights to the garnished accounts; and

(4) FTBB's interest in the Regions writ is void due to its fraudulent and collusive purchase of the Regions judgment.

5

The first three arguments were previously addressed in the Report and Recommendation on dispositive motions relating to the USAmeriBank writ of garnishment (Doc. 711).  In short, this Court found that the Regions writ did not dissolve by operation of law and recommended that Travelers motion in that regard be denied.  *Id.* at 33-35.  This Court also recommended that consideration of the alleged IRA account identified only in answer to the Traveler's writ be denied without prejudice pending further discovery.  *Id.* at 13.  And, Travelers' motion, insofar as it sought a ruling as a matter of law that Regions released all claims against Kearney before it transferred by sale and assignment its judgment to FTBB, was rejected.  *Id.* at 36-40.

The Report and Recommendation was adopted and approved by the district judge, and Travelers' motions for summary judgment (Docs. 628, 643) were granted in part and denied in part; the other motions for summary judgment (Docs. 634, 644, and 645) as well as the motions to dissolve the Writ (Docs. 595, 596, 597) were denied.  (Doc. 719).

The remaining issue – wherein Travelers seeks a ruling as a matter of law that FTBB's purchase of the Regions' judgment was collusive or fraudulent – was left for determination in these proceedings supplementary.  By this fourth argument, Travelers argues that FTBB's interest in the Regions writ is void due to its fraudulent and collusive purchase of the Regions judgment.  Travelers asks that the Court set aside or void the assignment and rule as a matter of law that FTBB has no rights to the claim priority to the USAmeriBank accounts.  Alternatively, it asks that FTBB's rights be equitably subordinated to Travelers' rights of collection.  (*See* Doc. 643 at 16-22).

By its cross-motion for summary judgment and in its response (Docs. 671, 673), FTBB argues as a matter of law that Travelers is not entitled to the relief requested on any count in the proceedings supplementary and that summary judgment in its favor is appropriate.  In short, as to Count I it argues that the Mediation Settlement Agreement, the Confidential Judgment Purchase and Sale Agreement, and the Assignment of Judgment were contemporaneous agreements intended by the parties who executed the agreements to be interpreted and applied in a manner consistent with the outcome they were seeking to achieve. Under Florida law, it claims the documents should be construed together as a single contract. In that light, Regions did not release its claims against Kearney prior to the sale and assignment of the Regions judgment.

As for Count II, it urges there is no basis to contend that the assignment to FTBB was fraudulent, collusive, or a sham and thus no basis to set it aside.  At no time were either FTBB or Regions a debtor of Travelers and thus, there is no basis under the statute to assert that any transfer between these entities is fraudulent as to Travelers.  It claims that Travelers' requested relief – to void and unwind the assignment of judgment – would require Regions Bank to return the $2.625 million received.  This Court, it argues, cannot order a non-party to do so without Regions being before the court to assert its interests and/or opposition. Moreover, other parties such as Tonya Kearney, Clayton Kearney, Charles W. Kearney, III, and Bryan Kearney each have in interest in maintaining the agreements with Regions because they participated in the settlement by agreeing to garnishment of the USAmeriBank accounts.

Moreover, it urges that Travelers presents no support for its proposition that the son of a debtor, using his own money, may not purchase a debt owed by his father.  And, it argues

there is simply no evidence to support Travelers' argument that Clayton Kearney and his entities are the alter ego of Bing Kearney, nor is there evidence that the funds used to purchase the Regions judgment actually belonged to Bing Kearney.  Rather, it claims that FTBB is a bona fide purchaser for value without notice, such that its position may not be disrupted.

As for Count III – Travelers' request for equitable subordination of the Regions assignment to FTBB to Travelers' Judgment and rights thereunder – FTBB claims that once again the facts do not support that the assignment of Regions judgment was fraudulent, collusive, or a sham and thus there is no legal basis for equitable subordination.  Again, it asserts that there is nothing improper or inequitable in Clayton Kearney's purchase of the debt of his father and therefore no basis for the extraordinary remedy of equitable subordination.[5]

In response, Travelers cites evidence which it asserts shows Kearney's role in the formation of FTBB and his continuing control over it; his role in the settlement with Regions, including his control over and orchestration of the sale and assignment of the Regions judgment to FTBB; and his purported payments to Moose of more than $3.5 million intended to resolve the Regions claims and to block its and other creditors' claims.  It urges that FTBB, which is a former shelf company of Kearney's, is not a bona fide purchaser of the judgment but rather a party to a collusive effort to avoid Kearney's legitimate creditors.  (Doc. 674).

---

[5]In support, FTBB presents the affidavits of James Reed and Bing Kearney, the deposition of Clayton Kearney, the deposition of Timothy Snyder, Travelers' corporate representative, and the deposition of John Anthony.  (Docs. 671-8 - 671-14; Docs. 673-1 - 673-8).

### III. Standard of Review

In accordance with Federal Rule of Civil Procedure 56, summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. *Fennell* at 1216 (citing *Welding Servs., Inc.* at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of

fact … the court may grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### IV. Factual Background

The undisputed facts in these proceedings are essentially historical facts and supported by documentary evidence.

In or about April 2015, Kearney and Regions entered settlement discussions which culminated in three agreements, the Mediation Settlement Agreement among Regions, Kearney, and his wife Tonya, which resolved a number of outstanding claims between them; the Confidential Judgment Purchase and Sale Agreement between Regions and FTBB for the purchase of the Regions judgment between Regions and FTBB; and the Assignment of Judgment between Regions and FTBB.  (Docs. 643-8, 643-9, and 643-12).

Moose Investments, ostensibly on behalf of FTBB, paid Regions the purchase price of $2.625 million for the Regions judgment.  Subsequent thereto, FTBB was substituted as party-plaintiff in the Region's case.  (Regions case, Doc. 545, 549).  And as noted above, FTBB then attempted to complete the garnishment of USAmeriBank accounts, originally initiated by Regions, to take title to the approximately $700,000 held by USAmeriBank pursuant to the Regions writ.[6]  (*Id.*, Doc. 561).  It does not appear that FTBB has initiated any additional collection efforts against Kearney.

It also appears undisputed that FTBB is wholly owned and managed by Moose Investments.  (Doc. 643-7).  Moose Investments, in turn, is wholly owned by Clayton

---

[6]In arguments to the Court, FTBB has also made claim (at least a priority claim) to the IRA account also identified in USAmeriBank's Answer to Travelers' Writ, but which was not identified in answer to the Regions writ.

Kearney.  (Doc. 643-5).  Clayton Kearney is Bing Kearney's son.  (Doc. 643-14 at 4).

Clayton Kearney organized Moose Investments, and initially funded the company using funds

from personal injury and extra-contractual settlements, in the sum of approximately $11

million.  (Doc. 673-4).  FTBB was a Kearney "shelf" corporation activated just two weeks

prior to the purchase of the Regions judgment to effectuate that transfer.  (Doc. 643-4 at 9).

FTBB itself had no money, no bank accounts, nor operations.  *Id.*  On March 17, 2015, Bing

Kearney paid to Moose payments totaling $3.5 million.  (Doc. 643-17).  Purportedly, the

March payments were re-payment on a line of credit established in 2012.  *Id.*  While the

payments themselves are not disputed, the ownership of the monies and the purpose of the

payments are disputed.

The parties wholly disagree on Kearney's ownership or control over FTBB; his

orchestration of the Regions settlement; whose money paid for the purchase of the Regions

judgment; whether Kearney orchestrated the purchase with or without his own money for his

benefit and to prevent Travelers or other creditors in their collection efforts; whether FTBB

and Clayton Kearney acted in collusion with Bing Kearney such that the purchase was a sham

intended to delay, hinder, or prevent Travelers and other creditors.

## V. Discussion

Upon my review, apart from the issue of the purported release raised in Count I, I find

the material facts sufficiently in dispute to prevent summary judgment for either party on

Counts II and III.

11

## A.

As noted above, the matters raised by Travelers in Count I were previously addressed by the Court.  By Order of April 8, 2016, the presiding judge adopted the recommendation that Travelers' motion seeking a ruling as a matter of law that Regions released all claims against Kearney before it transferred by sale and assignment its judgment to FTBB be denied. (Doc. 719).

The arguments made on these cross motions are essentially the same; they cite no new facts or law and call for the same ruling.  Thus, I again find that the agreement entered into by Regions and the Kearneys and the purchase, sale, and assignment agreements between Regions and FTBB were entered contemporaneously and intended by the parties to be construed and applied as part of the same overall transaction consistent with the parties' intent.  On these cross-motions, Travelers' claim that Regions released its claims against Kearney before the assignment of judgment to FTBB should be **denied**.  And, FTBB's motion seeking summary judgment on Count I on the grounds that there was no such release, should be **granted**.[7]

## B.

In Count II, Travelers asserts that FTBB's purchase of the Regions judgment is fraudulent, the product of collusion and a sham – orchestrated, negotiated, and apparently paid for by Bing Kearney.  By its view of the evidence, FTBB is merely the nominal owner of

---

[7]In the undersigned's prior Report and Recommendation, it was recommended that FTBB's motion for summary judgment be denied in large part because FTBB failed to file the necessary affidavit under Florida Statute § 77.16 to grant it a right move to dissolve the Writ. (Doc. 711 at 30-33).  However, on FTBB's present motion for summary judgment in proceedings supplementary, its standing is not is dispute.  As such, the Court finds that FTBB's motion in this regard should now be granted.

the Regions judgment but in fact Bing Kearney controls the asset and the monies; Kearney

arranged the purchase and sale and the assignment of the Regions judgment for the purpose of

insulating himself from the collection activities of Travelers and others in the USAmeriBank

garnishment funds.  While all but expressly conceding disputed facts which prevent the entry

of summary judgment, Travelers asks that the Court to either void or set aside FTBB's

assignment.  (Doc. 643 at 16-22).

FTBB, on the other hand, argues that there is nothing improper about FTBB's

purchase of the Regions judgment.  Although Clayton Kearney is admittedly the son of Bing

Kearney, there is no rule against a son or his company using his own funds to purchase a

judgment against a family member.  It disputes that Kearney funded the purchase.  By

FTBB's argument, the facts show it purchased the judgment through an arms-length

transaction and it fully intends to make money on the purchase.  (Doc. 673).

Florida's proceedings supplementary statute provides: "When any gift, transfer,

assignment or other conveyance of personal property has been made or contrived by the

judgment debtor to delay, hinder, or defraud creditors, the court shall order the gift, transfer,

assignment or other conveyance to be void and direct the sheriff to take the property to satisfy

the execution."  Fla. Stat. § 56.29(6)(b) (2015).  Whether a defendant's actions are made or

contrived to "delay, hinder, or defraud" is determined by reference to Florida's Uniform

Fraudulent Transfer Act (UFTA), set out in Chapter 726.  Section 726.105(1) states: "(1) A

transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor

made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud

any creditor of the debtor ...."  Fla. Stat. § 726.105(1) (2015).

13

Because of the difficulty of proving actual intent, the statutes provide certain "badges of fraud" or indicia which may give rise to a presumption of fraudulent intent. *See Woodell v. TransFlorida Bank*, 717 So. 2d 108, 109 (Fla. Dist. Ct. App. 1998); *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 152 (Fla. Dist. Ct. App. 1994). In determining actual intent [to hinder, delay, or defraud], consideration may be given, among other factors, to whether:

> (a) The transfer or obligation was to an insider.[8]
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was of substantially all the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. § 726.105(2).

As specifically noted in the statute, consideration may also be given to factors other than those listed. *See In re Miller,* 188 B.R. 302, 305-06 (Bankr. M.D. Fla. 1995). "Courts

---

[8]"Insider" includes:
> If the debtor is an individual:
> 1. A relative of the debtor or of a general partner of the debtor;
> 2. A partnership in which the debtor is a general partner;
> 3. A general partner in a partnership described in subparagraph 2.; or
> 4. A corporation of which the debtor is a director, officer, or person in control....

Fla. Stat. § 726.102(8).

may take into account the circumstances surrounding the conveyance." *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. Dist. Ct. App. 2013) (citation omitted).  These badges of fraud create a prima facie case and raise a rebuttable presumption that the transfer is void.  *Id.* at 327-28 (quoting *Stephens v. Kies Oil Co.*, 386 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 1980).  "While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud."  *Mejia v. Ruiz*, 985 So. 2d 1109, 1113 (Fla. Dist. Ct. App. 2008) (citations omitted).  Once a plaintiff makes a prima facie showing, "the burden shifts to the debtor to show the transfer was not made to hinder or delay or defraud creditors."  *Id.*

At the outset, it merits noting that, "in fraud cases, summary judgment is available only in extraordinary circumstances."  *In re Bifani*, 580 Fed. App'x 740, 745 (11th Cir. 2014) (citing *Nationsbank, N.A. v. Coastal Utils., Inc.,* 814 So. 2d 1227, 1231 (Fla. Dist. Ct. App. 2002)).  I find this is not one of those extraordinary cases.

While I address circumstances surrounding FTBB's purchase of the Regions judgment that arguably are suspicious and suggestive of collusion, I recognize that FTBB presents contrary evidence suggesting the settlement with Regions was made at arm's length and raising doubts as to fraudulent intent.  As I am obliged to view the facts in the light most favorable to the non-moving party and am prohibited from making credibility determinations, I conclude that summary judgment for either party is inappropriate.

To illustrate some of the suspicious circumstances, Kearney's transfer of $3.5 million to Moose Investments, a company wholly owned by his son, shortly before the assignment of Regions' judgment and in the midst of his settlement negotiations with Regions seems highly

15

calculated and of suspicious timing.  In an affidavit previously filed with the Court (Doc.

619), Kearney has explained that on March 1, 2012, Moose Investments issued him a line of

credit in the amount of $5 million, documented by a Revolving Line of Credit Promissory

Note (Doc. 619 at 6-8) and Security Agreement (*id.* at 9-13).  Since 2012, Kearney has taken

numerous withdrawals on the line of credit, made payments, and remains indebted to Moose

in the amount of $383,631.50.  (*Id.* at 4-5).  However, according to Kearney's own

submission, he had never before made such a substantial payment – and in fact had never

made a repayment prior to September 2014.  *Id.*  According to the testimony of Regions'

attorney John Anthony, the mediation between Kearney and Regions began on March 27,

2015 (ten days after Kearney transferred the $3.5 million to Moose), and took place over the

course of about a month.  (Doc. 643-11 at 12).  Travelers notes that FTBB was a shelf

company of Kearney's dusted off by him for use in this instance.  Thus, it claims that such

suggests the money and entity used to purchase the Regions judgment was Kearney's and the

scheme as between Kearney and FTBB was to provide Kearney with a vehicle for thwarting

Travelers' collection efforts against the USAmeriBank funds.  Travelers notes further that

Moose/FTBB, despite now holding the Regions judgment, have not attempted any collection

efforts against Kearney.  In a light favorable to Travelers, the various circumstances

surrounding Moose's receipt of such a large amount of money from Kearney just before

negotiations and settlement in the Regions case is at least suggestive of fraud and collusion, although in and of itself not evidence of intent to defraud or hinder creditors.[9]

Moreover, the fact that Moose is wholly owned by Kearney's son raises questions of possible collusion.  Although Moose and FTBB do not fit the statutory definition of "insider," (*see* n. 8 supra; Fla. Stat. § 726.102(8)), the statute is not exclusive.  *See In re Bifani*, 580 Fed. App'x at 745 (citing *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014) ("The items that follow each use of the word 'includes' in the statute are non-exhaustive examples....").  In a deal seemingly wholly conceived of by Kearney, Kearney's purported funding of Moose and Moose's funding of FTBB's purchase of the Regions judgment provides an arguable basis for claiming collusion between Kearney and his son in order to defeat legitimate collection efforts by Travelers.[10]  While FTBB is absolutely correct that holding a judgment against a close family member is not *per se* fraudulent or collusive, these circumstances, viewed in a light most favorable to Travelers, are suspicious as to whether such judgment is intended to be used as shield against inferior lien/judgment holders.

---

[9]I note that in Florida, "it is *not* fraudulent to give the funds to some but not all existing creditors, even though the effect might be to injure or prejudice an existing creditor who was not chosen to receive the debtor's largesse.  These so-called preferential transfers are not deemed fraudulent even though their natural effect is to hinder or delay the non-preferred creditors." *Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626, 629 (Fla. Dist. Ct. App. 1988) (citing *Jackson v. Citizens' Bank & Trust Co.*, 53 Fla. 265, 44 So. 516 (1907); *Godard v. Crenshaw*, 136 Fla. 78, 186 So. 822 (1938); *Jones v. Wear*, 111 Fla. 69, 149 So. 345 (1933); *Vickers v. Glenn*, 102 Fla. 535, 136 So. 326 (1931); *Baldwin v. La Fayette Land Co.*, 62 Fla. 129, 56 So. 943 (1912)); *see also In re Leneve*, 341 B.R. 53, 61 (Bankr. S.D. Fla. 2006) ("repaying one creditor at the expense of others may not be nice but it does not automatically provide conclusive evidence of fraudulent intent").

[10]In his deposition, Clayton Kearney explained that James Reed advises him on how to invest  (Doc. 643-14 at 7), and that he invested in the purchase of the judgment "after getting the advice of my father and Mr. Reed" (*id.* at 13) and to "make money" (*id.*).

Another suspicious circumstance evident from the record is that following the settlement between the Kearneys and Regions, Regions' attorney delivered materials "pursuant to 4(d) of the 'Confidential Judgment Purchase and Sale Agreement'" to William Collins, attorney to Bing Kearney, rather than to FTBB or its counsel.  (Doc. 643-15).  As Travelers point out, the Purchase and Sale Agreement required Regions to transfer to FTBB "all documents received from Mr. and/or Mrs. Kearney in connection with judgment collection efforts."  (Doc. 643-8 at ¶ 4(d)).  But, the documents that could have aided FTBB in its collections efforts were delivered to Kearney, not FTBB.  Counsel for FTTB was copied on the correspondence but "w/o enclosures." (Doc. 643-15 at 3).  In addition, following or contemporaneous with the settlement and entry into the purchase agreement with Regions, Kearney sent an email to FTBB's counsel stating, "Frank, don't make any commitments on behalf of ftbb until you talk with bill Collins [Bing Kearney's attorney] who is out of town on a personal matter.  Thanks, Bing"  (Doc. 643-16).  That Kearney was delivering instructions to his new judgment creditor's counsel also arguably smacks of collusion or control.  These communications remain unexplained by FTBB or Kearney.

In sum, on the proffered evidence and arguments, I conclude that disputed facts preclude the grant of summary judgment to either party on Count II.  Questions of fact remain as to whether Kearney orchestrated the negotiated settlement; Kearney's control over FTBB; the source of the monies used for the purchase of the Regions judgment; the alleged collusion or intent to defeat Kearney's creditors; and whether or not Clayton Kearney was a bona fide purchaser for value.  Clayton Kearney's intentions with respect to the judgment also requires this Court to make determinations as to his credibility that are inappropriate at this stage of

18

the proceedings.  As with most fraud cases, whether the negotiation and purchase of the Regions judgment here was made with fraudulent intent cannot be made without engaging in significant credibility findings.[11]

Moreover, insofar as FTBB argues *as a matter of law* that there can be no fraudulent transfer in these circumstances because neither FTBB nor Regions Bank were ever debtors of Travelers, I am unpersuaded.  First, it offers no convincing legal authority in support of the argument.  Here, in a light most favorable to Travelers, Kearney concocted this elaborate scheme to transfer funds for the purpose of inserting a friendly creditor (i.e. his son) ahead of Travelers in the chain of priority with the intent being to defraud Travelers and prevent it from obtaining garnishment of the USAmeriBank funds.  By my reading, the Florida statutes on fraudulent transfers and proceedings supplementary are properly read to include these facts and circumstances given that the primary inquiry under the law is whether there has been an assignment or other conveyance "made or contrived by the judgment debtor to delay, hinder, or defraud creditors."  *See* Fla. Stat. § 56.29(6)(b).

As for FTBB's claim that it is bona fide purchaser for value without notice, such that it is exempt from execution, such is also factually disputed.  While it proffers that Clayton Kearney used his own funds received in a personal injury matter to buy the Regions judgment and that he intends to make money off the purchase, Travelers contends the facts show the money likely came from Kearney shortly before the sale and assignment.  By its contention,

---

[11]Credibility determinations at the summary judgment stage are impermissible.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

19

these facts show that FTBB is not a bona fide purchaser for value,[12] but rather, it was Kearney that orchestrated and paid for FTBB's purchase of the Regions judgment.[13]  At the very least, Travelers argues that whether Bing Kearney paid for the purchase is a disputed fact that precludes summary judgment on this point.  Moreover, Travelers claims that even if he did not fund FTBB's purchase, he orchestrated the purchase for his own benefit and to hinder his creditors.  And, whether such was for the purpose of delaying or hindering or defrauding Travelers is a question of fact.  I agree.

As for FTBB's argument that Regions and all the affected Kearney family members are necessary parties to be impleaded into this case or otherwise brought before the court if the Mediation Settlement Agreement is to be unwound, I am unpersuaded.  On this point, Travelers argues that Regions is unnecessary to these proceedings because it is not asking the Court to order the return of the purchase money from Regions but instead it seeks a ruling that the assignment to FTBB be voided, set aside, or equitably subordinated – not "unwound." Here, if the Court were to void or equitably subordinate FTBB's interest on a finding of fraud or collusion, only FTBB's interests in the assignment would be affected, not Regions because

---

[12]As the name implies, a bona fide purchaser must purchase an asset "for value" and "without notice of any adverse claim."  Fla. Stat. 56.29(6)(b); *First Nat. Bank of Florida Keys v. Rosasco*, 622 So. 2d 554, 555 (Fla. Dist. Ct. App. 1993).

[13]FTBB attempts to make argument that because Regions negotiated the sale of the judgment to FTBB in good faith, that somehow ends inquiry.  However, Regions' actions are not at issue here.  Instead, it is Kearney and FTBB's motivations that are under the microscope.

Regions settled it dispute with Kearney and has been paid.[14]   At this stage, this are no grounds for the grant of summary judgment and I am unable to see any reason why Regions, which is not accused of any wrongdoing by anyone, is a necessary party to this proceeding supplementary.  And, the Court fails to see why Kearney family members would have any say in the matter simply because they consented to FTBB's garnishment of funds held by USAmeriBank.

In sum, I conclude that factual matters prevent the Court from making a determination of fraudulent intent and that as a matter of law summary judgment is inappropriate on the motions presented.

## C.

As an alternative remedy, Travelers asks in Count III that any interest that FTBB may claim in the Regions Judgment and/or the USAmeriBank garnished accounts be equitably subordinated to Travelers' interest.  While recognizing that such relief is an extraordinary remedy under Florida law, it again urges the facts show the requisite unfairness or gross misconduct on FTBB's part to merit the relief.  On the other hand, FTBB argues that this claim is predicated upon the same facts and circumstances as asserted in Count II and for the same reasons, Count III fails as a matter of law both legally and factually.

For the reasons discussed above, I conclude that the Court cannot make a determination on Travelers' equitable subordination claim in the absence of a full hearing on

---

[14]"It is well settled Florida law that where property is purchased by a debtor and title is taken in the name of another to avoid creditors, the deed may be set aside as a fraudulent conveyance by all existing and subsequent creditors." *In re Sperry*, 101 B.R. 763, 766 (Bankr. M.D. Fla. 1989) (citing Florida law).

the allegations of fraud and collusion.  As such, as to Count III, the claim for equitable

subordination, the motions for summary judgment should be **denied**.[15]

## VI. Conclusion

Accordingly, as set forth above, it is **RECOMMENDED** that:

> **(1) Travelers' Adopted Motion for Summary Judgment (Doc. 670,** adopting in whole the arguments set out in Doc. 643) be **DENIED;** and

> **(2) FTBB, LLC's Motion for Summary Judgment on Amended Complaint for Proceedings Supplementary (Doc. 671)** be **GRANTED as to Count I and DENIED as to Counts II and II** of Travelers' Amended Complaint.

Respectfully submitted this
25th day of May 2016.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of record

---

[15]The Court need not reach FTBB's argument that, even if successful, Travelers' Judgment would still be subordinate to Regions' equitable interest in its judgment.  This argument offers FTBB no basis for relief and is better left for another day.