UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


KEARNEY CONSTRUCTION
COMPANY LLC,

      Plaintiff,

v.

TRAVELERS CASUALTY &                    Case No. 8:09-cv-1850-T-30CPT
SURETY COMPANY OF AMERICA,

      Defendant/Third Party Plaintiff,

v.

KEARNEY CONSTRUCTION
COMPANY, LLC, et al.,

      Third Party Defendants.
_____/


TRAVELERS CASUALTY &
SURETY COMPANY OF AMERICA,

      Plaintiff,
v.

BING CHARLES W. KEARNEY, JR.,
CLAYTON W. KEARNEY, and OLGA
KEARNEY,

      Defendants.
_____/

# O R D E R

Before the Court is *Travelers Casualty & Surety Company of America's [Travelers] Motion to Strike Demands for Jury Trial Filed by Bing Kearney, Clayton Kearney, and Olga Kearney.* (Doc. 1005).  For the reasons set forth below, Travelers's motion is granted.

## I.

In October 2011, the Court entered Judgment in Travelers's favor and against Bing Charles W. Kearney, Jr. (Bing Kearney) and others in the amount of $3,750,000.  (Doc. 244).  According to Travelers, in the years since then, it has only been able to collect $1,158,037 against the Judgment despite "numerous" attempts to obtain the full amount.  (Doc. 1004, Doc. 1005 at 2-3).

As part of its ongoing collections efforts, Travelers initiated these proceedings supplementary pursuant to Federal Rule of Civil Procedure 69 and Florida Statutes section 56.29 with respect to certain real property (the Property) (Docs. 970, 981), which Travelers asserts in its supplemental complaint Bing Kearney previously co-owned in equal shares with his son, Clayton Kearney (Doc. 982 at 4).  Travelers avers that after being notified of Travelers's intent to initiate execution proceedings against the Property, however, Bing Kearney signed a quit claim deed transferring the Property to Clayton Kearney and Clayton's wife, Olga Kearney.  *Id.* at 5. Alleging that Bing Kearney executed the quit claim deed to try and defeat Travelers's efforts to collect on the Judgment, Travelers asserts two counts in its supplemental complaint: the first to void Bing Kearney's purportedly fraudulent transfer of the

Property; and the second to levy and sell the Property once the fraudulent transfer is voided and then to apply the proceeds to the Judgment.  *Id.* at 6-9.

Following the initiation of the proceedings supplementary, Clayton and Olga Kearney were impleaded as parties, served with process, and filed their joint answer and affirmative defenses.  (Docs. 991, 992, 1002).  In a separate filing that same day, Clayton and Olga demanded a jury trial.  (Doc. 1001).  Contemporaneously with Clayton and Olga's submissions, Bing Kearney filed his own answer and affirmative defenses and demanded a jury trial as well.  (Doc. 1003).

The gist of Bing, Clayton, and Olga Kearney's defense is that Bing Kearney never actually owned any interest in the Property, and that his name was on the deed merely so that he could oversee it while his son, Clayton, recovered from a motor vehicle accident.  The Kearneys further assert that the Property is Clayton and Olga's homestead and is therefore exempt from Travelers's collection efforts.  *See* (Docs. 1002, 1003).

By way of its instant motion, Travelers now seeks to strike the Kearneys's jury demands.  (Doc. 1005).  The Kearneys oppose that request.  (Docs. 1008, 1009).

## II.

The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ."  U.S. Const. amend. VII.  It is well established that this constitutional provision mandates a right to a jury trial for matters of law, but not matters in equity.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) ("We have

3

consistently interpreted the phrase 'Suits at common law' [in the Seventh Amendment] to refer to suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.") (internal quotation marks and citation omitted).  This analysis applies to "common-law forms of action," as well as to "causes of action created by congressional enactment."  *Tull v. United States*, 481 U.S. 412, 417 (1987) (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Whether state claims—like those asserted by Travelers here—are legal or equitable for Seventh Amendment purposes is a matter of federal, not state, law.  *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions.").

The test under federal law for determining whether a right to a jury trial attaches to a statutory right of action requires courts to "examine both the nature of the action and . . . the remedy sought."  *Tull*, 481 U.S. at 417.  The Supreme Court has instructed that the second prong of this test is "'[m]ore important'" than the first.  *Id*. at 421 (quoting *Curtis*, 415 U.S. at 196) (footnote omitted).

In the end, "[q]uestions regarding the right to a jury trial should be resolved in favor of the right to a jury trial, except where a remedy is wholly equitable in nature."  *Fox v. City of Pompano Beach*, 984 So. 2d 664, 668 (Fla. Dist. Ct. App. 2008) (citing *Hansard Constr. Corp. v. Rite Aid of Fla., Inc.,* 783 So. 2d 307, 308 (Fla. Dist. Ct. App. 2001)).  On appeal, the district court's determination whether to grant or deny a

motion to strike a jury demand is reviewed *de novo*. *Hughes v. Priderock Capital Partners, LLC*, 812 F. App'x 828, 832 (11th Cir. 2020)[1] (per curiam) (citing *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080 (11th Cir. 2016)).

Against this backdrop, the Kearneys's demands for a jury trial fail. To see why this is so requires a review of the statutory framework governing proceedings supplementary.

Under Federal Rule of Civil Procedure 69, proceedings supplementary must accord with the procedure of the state where the court is located. Fed. R. Civ. P. 69(a)(1); *Estate of Jackson v. Ventas Realty, Ltd. P'ship*, 812 F. Supp. 2d 1306, 1310-11 (M.D. Fla. 2011). The procedure for proceedings supplementary in Florida is set forth in section 56.29 of the Florida Statutes. The purpose of that statute is to provide a mechanism "for a judgment creditor 'to ferret out what assets the judgment debtor may have or what property of his others may be holding for him, or may have received from him to defeat the collection of the lien or claim, that might be subject to the execution.'" *Longo v. Associated Limousine Servs., Inc.*, 236 So. 3d 1115, 1118 (Fla. Dist. Ct. App. 2018) (quoting *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1950)).

Under section 56.29, a judgment creditor has two procedural avenues available to it. It can either seek the issuance of a Notice to Appear under section

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

56.29(2), or it can initiate a fraudulent transfer action under section 56.29(9).  Fla. Stat. § 56.29.

As substantially amended effective July 1, 2016, section 56.29(2) states, in pertinent part:

> The judgment creditor shall, in the motion described in [section 56.29(1)] or in a supplemental affidavit, describe any property of the judgment debtor not exempt from execution in the hands of any person or any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment. Upon filing of the motion and affidavits . . . then the court shall issue a Notice to Appear.  The Notice to Appear shall direct such person to file an affidavit . . . stating why the property, debt, or other obligation should not be applied to satisfy the judgment. . . . The Notice to Appear . . . must provide such person with the opportunity to present defenses, and must indicate that discovery as provided under the rules of civil procedure is available and that there is a right to a jury trial as provided in [section] 56.18. . . .

Fla. Stat. § 56.29(2).

Section 56.29(9), on the other hand, provides, in relevant part:

> The court may entertain claims concerning the judgment debtor's assets brought under [Florida Statute] chapter 726[2] and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property.  Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure.

---

[2] Chapter 726 is known as the Uniform Fraudulent Transfers Act (UFTA).

6

Fla. Stat. § 56.29(9);[3] *see also In re British Am. Ins. Co. Ltd.*, 607 B.R. 753, 758 (S.D. Fla. 2019) (noting that a party may bring a chapter 726 fraudulent transfer claim in proceedings supplementary via a "'supplemental complaint . . . served as provided by the rules of civil procedure'") (quoting Fla. Stat. § 56.29(9)).

In this case, Travelers elected to proceed under section 56.29(9) by filing a supplemental complaint, rather than under section 56.29(2) via a court-issued Notice to Appear.   As referenced above, section 56.29(9) claims brought by way of a supplemental complaint "are subject to chapter 726" of the Florida Statutes (i.e., the UFTA) as well as Florida's rules of civil procedure.

Chapter 726, in turn, sets forth a number of remedies available to creditors, including:

> [1](a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> * * *
>
> (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>> 1.   An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>> 2.   Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>> 3.   Any other relief the circumstances may require.

---

[3] Section 56.29(9) was added to chapter 56 of the Florida Statutes in 2016 and supplanted section 56.29(6), which permitted "judgment creditors to file claims under the [UFTA] in proceedings supplementary."  Fla. Comm. Report, 2016 FL S.B. 1042 (NS), at 4 (Jan. 12, 2016).  "To underscore that UFTA claims [under chapter 726] are distinct from proceedings supplementary, the bill provided that UFTA claims [brought under section 56.29(9)] must be initiated by a supplemental complaint [and] are subject to chapter 726 [of the Florida Statutes], and the rules of civil procedure."  *Id.*

> (2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Fla. Stat. § 726.108.

Courts interpreting chapter 726's provisions generally have found no right to a jury trial exists under that chapter because the remedies it affords are equitable, not legal, in nature such that the Seventh Amendment does not mandate interposing a jury. *See, e.g., Hansard Const. Corp.*, 783 So. 2d at 308-09 (finding that, although a right to a jury trial was available where the plaintiff sought a *monetary judgment* under the UFTA's catch-all provision, the "other remedies set forth in the [UFTA] are equitable in nature").

Two cases upon which Travelers relies bear this out. In *381651 Alberta, Ltd. v. 279298 Alberta, Ltd.*, 675 So. 2d 1385, 1387 (Fla. Dist. Ct. App. 1996), Florida's Fourth District Court of Appeal explained at the outset that the right to a jury trial applies only to legal and not equitable causes of actions. In deciding that the judgment-debtor in that action was not entitled to a jury trial under section 726.108 (quoted above), the court reasoned that the creditor sought to set aside a conveyance of land, which is traditionally an equitable remedy. *Id.* at 1387-88. In reaching this conclusion, the court noted that, in *Granfinanciera, supra*, the United States Supreme Court "stated in dicta that actions to recover real property are 'quintessentially equitable actions.'" *Id.* at 1387. The court also distinguished cases that found a jury trial right involving the recovery of a money judgment or the recovery and possession of specific real property, where—in the latter instance—the right asserted by the

8

plaintiff was title to the real property and where the remedy sought by the plaintiff was the possession and enjoyment of that real property. *Id.*; *see also Hansard Const. Corp.*, 783 So. 2d at 309 (distinguishing its holding that a claim for money damages requires a jury trial from the situation in *381651 Alberta, Ltd.*, where no jury trial was required because "the movants sought to set aside a conveyance of land, traditionally an equitable remedy").

Similarly, in *Mission Bay Campland v. Sumner Fin. Corp.*, 72 F.R.D. 464, 466 (M.D. Fla. 1976), the court examined the question of "whether in supplementary postjudgment proceedings . . . and state law in a diversity action, the impled, involuntary parties are entitled, as a matter of federal law, to a jury trial." In finding that the third-party transferee did not have such a right in an action to set aside a fraudulent transfer of land, the court explained:

> Defendant-counterclaim-plaintiff, as judgment-creditor has been unable to execute and satisfy its judgment; and it alleges that the principal reason for its inability to do so is because the judgment-debtor, plaintiff-counterclaim-defendant, fraudulently transferred assets from itself to the impled, involuntary counterclaim-defendants in order to prevent them from being levied upon. *At this point, the judgment-creditor seeks to set aside the effect of the allegedly fraudulent transfers and to have the assets reallocated in a way that will enable them to be reached by the judgment. Clearly, this is the kind of relief that only an equitable remedy can provide.*

*Id.* at 467 (emphasis added) (citations omitted).

Notwithstanding this line of authority, the Kearneys maintain that they are entitled to a jury trial under sections 56.18 and 56.19 of the Florida Statutes. (Docs. 1008, 1009). These two provisions pertain to execution and judgments where

9

"claims of third persons" (like Clayton and Olga Kearney) are involved.  They read, in pertinent part:

> 56.18  Executions; Trial of Claims of Third Persons. As soon as possible after the return, or *after service of a Notice to Appear pursuant to [section] 56.29(2)*, a jury, if not waived, shall be impaneled to try the right of property.
>
> 56.19  Judgments upon Claims of Third Persons. Upon the verdict of the jury, the court shall enter judgment deciding the right of property . . . .

Fla. Stat. §§ 56.18-19 (emphasis added).

In the alternative, the Kearneys argue that, even if certain aspects of Travelers's claims are considered equitable for Seventh Amendment purposes, the legal claims at issue are inextricably intertwined with the equitable claims such that their constitutional rights to a jury cannot be infringed.  *Id.*  Neither of these arguments survive scrutiny.

By its terms, section 56.18 provides a right to a jury trial for third parties in proceedings supplementary where a "Notice to Appear" has been issued "pursuant to [section] 56.29(2)."  Fla. Stat. § 56.18.  Travelers, however, is not pursuing relief under section 56.29(2) here.  Instead, as noted above, it has filed a supplemental complaint pursuant to section 56.29(9) and—as authorized by that provision—is seeking to invoke the equitable remedies available to it under the UFTA (i.e., chapter 726).

The distinction between proceedings supplementary under section 56.29(2)'s Notice to Appear provisions and proceedings supplementary under the UFTA (via

section 56.29(9)) is underscored by the Florida legislature's 2016 amendments to chapter 56.  As previously discussed, those amendments created section 56.29(9), which explicitly provided that "claims under the supplemental complaint [filed pursuant to section 56.29(9)] are subject to chapter 726."  Fla. Stat. § 56.29(9).  In addition, while the 2016 amendments added language to section 56.18 that triggered the right to a jury trial "after service of a Notice to Appear" in accordance with section 56.29(2), it included no such jury trial provision when the alternative method of proceeding under the UFTA is sought under section 56.29(9).  Fla. Stat. § 56.18.

Furthermore, unlike chapter 56, chapter 726 itself contains no statutorily-prescribed right to a jury trial.  And, as also noted above, courts interpreting this chapter's provisions have generally found that no right to a jury trial exists where the remedies are equitable, rather than legal, in nature.  *See Hansard Const. Corp.*, 783 So. 2d at 308-09; *381651 Alberta, Ltd.*, 675 So. 2d at 1387; *Mission Bay Campland*, 72 F.R.D. at 466.

As to the Kearneys's second argument, they do not cite, nor has the Court found, any authority that claims under the UFTA to set aside and levy real property carry a right to a jury trial.  The Kearneys's bald assertions that this case involves both legal and equitable claims are both unsupported and unpersuasive.

Indeed, the court in *Mission Bay* rejected an argument similar to one the Kearneys make here.  In that case, "the impled, involuntary counterclaim-defendants . . . contend[ed] that[, in order] to grant [the] equitable relief [sought by the judgment creditor (i.e., setting aside an allegedly fraudulent transfer and reallocating the assets

11

so that they could be reached by the judgment),] the Court must adjudicate [the impled parties'] right and title to the assets of the original counterclaim-defendant." 72 F.R.D. at 467. "Such an adjudication of title to assets," the impled parties claimed, "is historically a legal question of fact for which a jury trial is guaranteed." *Id*. Finding that this "argument widely misses the mark," the court stated:

> A judgment-creditor, by virtue of its judgment, obtains an equitable claim against the assets of the judgment-debtor that have been transferred fraudulently to third persons. Equity will afford relief by setting aside the effect of the fraudulent transfer insofar as it affects the right of the judgment-creditor to execute and satisfy its judgment. To that extent only the equitable remedy correspondingly affects the claim of right by third parties to the judgment-debtor's assets. To all others, the third-party transferees' claim of right remains valid and effective because there has been no general adjudication of their title to the assets (admittedly a question at law).

*Id*. at 467-68 (citations omitted); *cf. Ventas Realty*, 812 F. Supp. 2d at 1310 ("A supplemental proceeding is an assertion of an equitable claim against assets of the judgment debtor in the possession of an impleaded party, regardless of whether the impleaded party's role in receiving and possessing the assets is rightful . . . or wrongful. . . . Rather than adjudicating a cause of action asserted personally against an impleaded party by the judgment creditor, a supplemental proceeding identifies and marshals the assets of the judgment debtor in the hands of an impleaded party. A supplemental proceeding contemplates . . . no personal judgment against an impleaded party."). Other than their contention that section 56.18 guarantees them

the right to a jury trial, rejected above, the Kearneys make no viable claim that the issues presented are of a legal nature.[4]

III.

Based on all of the above, *Travelers Casualty & Surety Company of America's Motion to Strike Demands for Jury Trial Filed by Bing Kearney, Clayton Kearney and Olga Kearney* (Doc. 1005) is granted.

DONE and ORDERED in Tampa, Florida, this 19th day of November 2020.

*Christopher P. Tuite*

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record
Any unrepresented party

---

[4] This finding renders moot Travelers's alternative argument that, even if section 56.18 entitles Clayton and Olga Kearney (but not Bing Kearney, who is not a "third party" covered by the statute) to a jury trial, Clayton and Olga have not complied with the affidavit and bond requirements set forth in section 56.16. (Doc. 1005). While the Court need not address this contention, it does note that section 56.16 also does not appear to be applicable here. Under that provision, if a third party, other than the judgment debtor, "claims any property levied on, he or she may obtain possession of the property by filing . . . an affidavit . . . and by furnishing the officer a bond. . . ." Fla. Stat. § 56.16. This requirement applies to property which has been levied on and which is not in the third party's possession. *See Bally Case & Cooler, Inc. v. H. Kaiser Assoc., Inc.*, 514 F. Supp. 352, 355 (S.D. Fla. 1981) (holding that section 56.16 did not apply to a third party who was in possession of the property at issue); *Sanchez v. Century Everglades, LLC*, 946 So. 2d 563, 565 n.2 (Fla. Dist. Ct. App. 2006) (rejecting argument that the third party failed to file an affidavit when asserting rights prior to a levy because the statute "relate[s] to third party claims after property has been levied upon"). In this case, the real property at issue is in Clayton and Olga Kearney's possession and has not been levied upon. Accordingly, it does not appear that this couple would be obligated to provide an affidavit and bond before asserting their rights.